401 So.2d 1051 (1981)
Spiro A. TALAMBAS, d/b/a Allen Meat Company, Plaintiff and Appellee,
v.
LOUISIANA STATE BOARD OF EDUCATION (Now Named Louisiana State Board of Elementary and Secondary Education), Defendant and Appellant.
No. 8280.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
Rehearing Denied August 13, 1981.
Elaine F. Doyle, Baton Rouge, for defendant and appellant.
John P. Navarre, Oakdale, for plaintiff and appellee.
Before CULPEPPER, FORET and LABORDE, JJ.
CULPEPPER, Judge.
Plaintiff sues for damages for loss of use of a building and equipment and for deterioration *1052 of the building due to defendant's continued possession of the leased premises after the 6-month term of the lease expired. The original petition was filed on August 26, 1975 against the lessee, Louisiana State Board of Education. A default judgment was obtained by plaintiff against defendant on September 19, 1975 in the amount of $88,600. The attorney general, William Guste, Jr., then brought an action to annul the default judgment on the grounds of lack of citation and service of process. The district court, after a hearing on the merits, held the default judgment was valid and dismissed the attorney general's suit. On appeal, this court reversed and remanded. Talambas v. Louisiana State Board of Education, 365 So.2d 1183 (La.App. 3rd Cir. 1978).
After the remand, a supplemental and amending petition was filed by plaintiff updating to 1979 his demands for damages totaling $175,000. Although reconduction of the lease was not pleaded, judgment was rendered by the district court in favor of plaintiff for $43,200, representing rentals of $1,200 per month for 36 months the lease was held to be reconducted. Defendant appealed.
On appeal, defendant contends the trial judge erred in holding the lease was reconducted monthly from October 17, 1971 to October 17, 1974.
The pertinent facts show that by written instrument dated April 16, 1971 plaintiff leased to the Louisiana State Board of Education a meat processing facility to be used as a vocational training school for meat cutting. The facility, located near Oakdale, Louisiana, consisted of approximately 7,000 square feet and included equipment to accommodate 25 students. The lease was for a term of six months (from April 16, 1971 to October 17, 1971) at a monthly rental of $1,200. The lease agreement also contained an extension clause granting the lessee an option to extend the lease for an additional one-year period. The option was not exercised.
The 6-month lease ending October 17, 1971 was the last of a series of similar leases entered into between plaintiff and defendant after plaintiff bought the property in 1969 from T. J. Strother. Before 1969, Strother had similarly leased to defendant since he constructed the building in 1963. After Strother sold the property to plaintiff in 1969, Strother acted as agent for plaintiff in continuing to lease to the State and in maintaining the premises.
The meat cutting course lasted six months. As each new class was organized, a new 6-month lease was signed. At the end of each term, the school closed. Strother testified the instructor would usually tell him when a new class was going to start and when a new lease would be signed. There was usually a lull between classes. Strother indicated the lull was sometimes up to 90 days.
On the final day of the lease ending October 7, 1971, graduation ceremonies were held. Strother testified that the instructor, Mr. Rivett, said he would not return as the instructor, but that he thought a new instructor would arrive for a new class. According to Strother, Rivett locked the door to the building and kept the keys. Strother testified Rivett left knives, hard hats, seats, a blackboard, a power scale, office furniture and files in the building.
It was Strother's testimony that after no new instructor or other representative of defendant came back to the building, he telephoned several persons in the office of the Department of Education in an attempt to find out whether defendant was going to reopen the school and sign a new lease. He stated he could have rented to other parties. Strother says he never received an answer to his calls, so he finally wrote letters to Mr. A. J. Roy of Marksville, chairman of the Louisiana State Board of Elementary and Secondary Education, to Mr. J. Kelly Nix, Superintendent of Education, and to Mr. A. Earl Ingrem, who worked as an assistant in the office of Mr. Michot. Strother says he mailed letters to these three individuals by registered mail, return receipt requested. He identified and plaintiff introduced into evidence the return receipts for these letters. We notice these return receipts are *1053 dated in 1977, which was two years after the original suit was filed in this matter in 1975 and six years after the last 6-month lease expired in 1971. Also, no copies of the letters are in evidence.
Strother testified that after 1971 the building began to deteriorate. In October of 1974 he noticed water coming under the front door of the building, so he patched the roof. The lessor was responsible for such maintenance. Nevertheless, after that the building continued to deteriorate. Finally, on October 5, 1979, Strother went into the building and inspected it and found substantial deterioration requiring extensive repairs. A witness for plaintiff estimated the cost of repairs to the roof and other structural portions of the building would be $33,840.
The district court held defendant had failed to deliver possession of the premises to plaintiff after expiration of the lease, and therefore the lessor-lessee relationship continued between the parties under the theory of tacit reconduction. According to the court's finding, after October 17, 1971 the lease continued on a month-to-month basis until October, 1974, at which time it was or should have been apparent to plaintiff that defendant had abandoned the building. The court awarded plaintiff $43,200 as accrued unpaid rent for the 36 months following the expiration of the lease. Plaintiff's claims for damages to the building and the equipment were denied, because the lease provides the lessor is responsible for maintenance and repairs.
We will first discuss briefly a possible procedural issue. Plaintiff's petition does not expressly allege he seeks recovery on the theory of reconduction. He alleges the 6-month lease terminated on October 17, 1971, and that defendant remained in possession thereafter until 1979, in violation of a provision of the lease requiring that the premises be restored to the lessor on termination of the lease. The petition alleges that plaintiff lost use of the building and equipment for 100 months and that he suffered damages due to deterioration of the building. He prays for damages, not rent, in the total sum of $175,000.
There could be a question as to whether a cause of action for damages for breach of the lease, by lessee remaining in possession after the lease expired, is inconsistent with a cause of action for recovery of rent under a lease which continued by reconduction from month-to-month after the lease expired. If the causes of action are inconsistent, they should have been pleaded in the alternative. LSA-C.C.P. Article 892. However, defendant did not file in the district court a dilatory exception of improper cumulation of actions nor a motion to elect. Under LSA-C.C.P. Article 926, objections which may be raised through the dilatory exception are waived unless pleaded. Thus, defendant has waived any objection it could have raised as to improper cumulation of actions.
There is no question that plaintiff has pleaded facts sufficient for recovery under the theory of reconduction. The requirements for this cause of action, as discussed hereinafter are clearly alleged.
The principal issue is whether the lease was reconducted by the defendant's continued and unopposed possession of the premises beyond the expiration of the term of the last lease, and, if so, for how long.
The reconduction of a lease of a house or building by the lessee's continued possession after expiration of the lease is set forth in LSA-C.C. Article 2689 which provides:
"Art. 2689. If the tenant either of a house or of a room should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor, the lease shall be presumed to have been continued, and he cannot be compelled to deliver up the house or room without having received the legal notice or warning directed by Article 2686."
The reconducted lease is a continuation of the original lease in all respects except that the fixed term under the old lease is voided and the reconducted lease is considered to be by the month. LSA-C.C. Article 2685, Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970).
*1054 On appeal, defendants contend the final written lease was not reconducted because defendants no longer had actual possession of the building after October, 17, 1971. They further contend that even if defendant did continue in possession, the evidence negates a presumption of an intention of the parties to continue the lease beyond the agreed upon expiration date. At most, defendant contends there could be no presumption beyond 90 days, the longest lull between previous leases.
It is, of course, not the function of the law to force a contract upon unwilling parties. The party urging reconduction has the burden of proof. Governor Claiborne Apartments, supra. Where the evidence shows an intent to the contrary, the presumption of reconduction is inoperative. Jacobi v. Toomer, 164 So.2d 610 (La.App. 3rd Cir. 1964); Prisock v. Boyd, 199 So.2d 373 (La.App. 2d Cir. 1967); Kogos v. Lemann, 285 So.2d 548 (La.App. 4th Cir. 1973), writ refused, 288 So.2d 648 (La.1974).
Applying these rules to the present case, the first question of fact is whether defendant remained in possession of the premises after the last 6-month lease expired. This is a close question. As stated above, Strother testified that on the last day of the lease, Mr. Rivett, the last instructor, locked the building and kept the keys, telling Strother that he thought a new instructor would soon be arriving to start a new class. Also, Strother testified as to the above items of equipment which Rivett left in the building. It was Strother's testimony that when no new instructor arrived after a few days or perhaps weeks, he began to telephone the office of the Department of Education in Baton Rouge to find out whether a new class was going to start, because he could have leased the building to other parties. This testimony by Strother is uncorroborated, but, on the other hand, it is not contradicted. Strother's testimony is perhaps made questionable by his statements that he wrote letters requesting information as to whether defendant was going to continue to occupy the building, but he did not introduce into evidence copies of these letters, and the return receipts which he introduced as proof show that the letters were not mailed until 1977, which was six years after the lease ended.
Giving plaintiff every benefit of the doubt as to the issue of possession, we conclude that under Strother's testimony, which is uncontradicted, the actions of Mr. Rivett in leaving some of defendant's equipment in the building and then locking up the building and keeping the keys was sufficient to show that defendant remained in possession, at least for a short period of time.
The next issue of fact is whether the evidence as a whole supports a presumption that the parties intended the lease to continue from month-to-month for the period of 36 months found by the trial judge. We are unable to agree with the district court on this issue. The longest period that had ever elapsed between classes and between new leases was about 90 days. Strother's uncorroborated testimony is that he could not get an answer from his calls to the Department of Education as to whether they were going to start a new class, so he simply allowed the building to remain unused, and finally this suit was filed in 1975. Although defendant has not urged prescription, we note that amounts due for rent prescribe after three years, LSA-C.C. Article 3538, which was about the time plaintiff waited to file suit. An added fact which we cannot help but notice is that after the 6-month lease expired, defendant paid no more rent. This certainly weakens plaintiff's position that defendant is presumed to have intended to continue the lease in effect from month-to-month for a period of 36 months. Of course, there is also the added factor that during any month, plaintiff could have terminated the reconduction of the lease by simply following the procedure set forth in LSA-C.C. Article 2686, i.e., giving 10 days notice before the expiration of the month.
Under all of the circumstances, we conclude the longest period that a presumption of reconduction can be possibly found is 90 days. Accordingly, we will reduce the *1055 judgment to the sum of $3,600, representing rentals of $1,200 per month for the three months the lease was reconducted.
For the reasons assigned, the judgment appealed is amended so as to reduce the award to the sum of $3,600, plus legal interest from date of judicial demand until paid. One-half of all costs in the trial and appellate courts are assessed against the plaintiff. The other one-half of the costs are assessed against the defendant, insofar as costs of court or of appeal can be assessed against a state agency.
AFFIRMED, AS AMENDED.