199 So.2d 373 (1967)
Clovis PRISOCK and Benny Chop, Plaintiffs-Appellants,
v.
Willie BOYD, Defendant-Appellee.
No. 10840.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1967.
*374 Hamilton & Carroll, Oak Grove, for appellants.
W. Sartis Bassett, Oak Grove, for appellee.
Before HARDY, GLADNEY, AYRES and BOLIN, JJ.
*375 GLADNEY, Judge.
Writs were granted upon application of relators Clovis Prisock and Benny Chop for review of and relief from a judgment of the trial court recalling a restraining order and denying a preliminary injunction sought to prohibit the respondent Willie Boyd from interfering with the use of certain farm land owned by Clovis Prisock in West Carroll Parish. The question presented requires a decision as to whether Benny Chop or Willie Boyd, each of whom claim as a lessee of Prisock, holds a valid agricultural lease for the crop year of 1967. As the crop planting season is well advanced a prompt decision by the court has been requested.
The following salient facts were established on the trial of the rule for a preliminary injunction. Prior to 1965 Boyd was a lessee of Prisock. In January of 1965 two writings were signed by the parties, each embracing certain terms and conditions of their lease. The parties on January 11, 1965 executed a printed form of lease styled CROP-SHARE-CASH FARM LEASE with subordination agreement. Therein the landlord consented to the release of proceeds from the sale of crops to pay the expenses for harvesting and marketing. This lease provided as to the term thereof that it should be from January 1, 1965 to December 31, 1965 and continue in effect from year to year until written notice of termination is given to the other party two months prior to the expiration of the lease or any renewal thereof. The lease is extensive and covers some four pages of fine print [Form AD 561-1 (Oct 1960) U.S. Department of Agriculture]. The second writing was in letter form written by Prisock to Boyd and bears the date of January 5, 1965. It was styled "A Statement to Definitely state the Understanding we have." It contains a description of the land under lease, provides for the payment of rent and definitely fixed the expiration date of the lease as of November 1, 1965. Other terms and conditions therein except as referred to hereafter are not substantially inconsistent with those incorporated in the January 11 agreement. It does stipulate:
"I have leased you the property described below in this letter from January 1, 1965 to November 1, 1965 at 12 o'clock P.M. on the terms and conditions as follows * * *."
Although the instrument of January 11 provided for payment of rent of one-fourth of the soybeans and cotton produced, that in the letter form contains the following provision:
"On the land designated below as Plot No. 1 and Plot No. 2, you will pay me $1,700.00 cash rent or one-fourth (¼) of the gross value of the merchantable soy beans and cotton produced, whichever is greater. This rent is payable as soon as all the crops are harvested or November 1, 1965, whichever occurs first."
The closing paragraph of the letter bearing date of January 5, reads:
"If this is your understanding and agreement as to the rental of this property, please sign the original and one copy of this letter in the space provided herein below."
Below the signature of Prisock appears the following approval by Boyd: "AGREED AND ACCEPTED ON THIS THE 23rd DAY OF JANUARY, 1965," signed "Willie Boyd." On November 22, 1966 Prisock addressed a writing in letter form to Benny Chop stating that the writing was an acknowledgement and understanding of a verbal lease on his property in West Carroll Parish from December 1, 1966 to December 1, 1967 at 12 o'clock P.M. It contained other pertinent lease provisions and stated a complete agreement and understanding and was accepted on the 20th day of December, 1966 by Benny Chop as evidenced by his signature. It was later placed of record in Lease Book 10 of the Records of West Carroll Parish on March 28, 1967 and was the only instrument recorded.
*376 The duration and conditions of a lease are generally regulated by contract or by mutual consent, and when an expiration date has been agreed upon, the lease ceases at the time fixed. LSA-C.C. Arts. 2684, 2727.
Our law recognizes that agreements legally entered into have the effect of laws on those who have formed them, and that such contracts may be modified, abrogated or revoked by mutual consent by the parties thereto. LSA-C.C. Arts. 1901, 1945, 2130. Scudder v. Howe, 44 La.Ann. 1103, 11 So. 824 (1892); Noto v. Blasco, La.App., 198 So. 429 (1st Cir. 1940); Banks v. Associated Indemnity Corporation, 161 F.2d 305 (5th Cir.1947); Roberts v. Radalec, Inc., 222 La. 831, 64 So.2d 189 (1953); Tharpe v. Tracy, La.App., 40 So.2d 509 (2nd Cir. 1949); Esso Standard Oil Company v. Welsh, 235 La. 593, 105 So.2d 233 (1958); Brooks v. Griggs Casing Crews, Inc., La. App., 136 So.2d 693 (2nd Cir. 1961).
Where an agreement is so modified the new terms are not effective until the other party assents and it is only then that the obligation is changed. LSA-C.C. Arts. 1800, 1803, 1806, 1807.
The trial court came to its decision by holding that the terms incorporated in the agreement of January 11, 1965 prevailed over the instrument signed by Boyd on January 23, 1965, it being of the opinion that the latter instrument was effective from January 5, 1965 and was superseded by the January 11 contract; and that as a result of this conclusion, the January 11 lease continued from year to year inasmuch as written notice was not given by either of the signatory parties. In view of the authorities cited above we hold that the writing signed by Boyd on January 23, 1965, represented the later understanding between the parties and therefore, insofar as inconsistent with the agreement of January 11, it controlled and changed the provisions as to the termination of the lease to the definite date of November 1, 1965. Due to this change no written notice of termination was required and the lease as between the parties ceased as of the time so fixed. There were no further written agreements between Prisock and Boyd. Prisock testified that for the crop year 1966 the parties were governed by a verbal lease, whereas Boyd contends that the lease was that of date January 11 due to failure of Prisock to give written notice to terminate. It appears from the testimony of both parties the later writing signed by Boyd was recognized in the payment of rent which, as stated above, was different from that incorporated in the January 11 contract.
On the first day of October 1966, according to the testimony of Clovis Prisock, Russell Boyd, married son of Willie Boyd, who was renting a house from Prisock, was notified by Prisock that his father could not have the property as lessee for the year 1967, and that following this conversation, Russell Boyd moved out of the leased premises on November 1, 1966. As noted above, on November 22, 1966 Prisock submitted the agreement with Chop for a lease of the property during the year 1967. During the early part of December disturbances occurred in the nature of threats and assaults by Boyd which prevented Chop from using the property. It was not until March 28, 1967 that plaintiffs' lease was recorded and this suit for injunction was filed on April 4, 1967.
An alternative argument is presented by counsel for respondent to the effect that if the lease on January 11 was not effective, according to its terms from year to year if notice is not given, a tacit reconduction has taken place under LSA-C.C. Art. 2688. This article reads:
"If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by a new lessee to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses *377 and conditions which it contained; but it shall continue only for the year next following the expiration of the lease." [LSA-C.C. Art. 2688]
In interpreting this article this court in Dyer v. Wilson, La.App., 190 So. 851 (2d Cir. 1939) declared that an indispensable prerequisite to a reconduction of a lease of predial property is that the lessee must remain in undisputed possession of the premises for thirty days immediately following the expiration of the term of the lease. The article is said to have:
"* * * no application whatever when either party has clearly announced his intention not to renew the lease on the same terms or for a full year, for the purpose of the law is not to force a contract upon parties unwilling to contract, but merely to establish a rule of evidence, or presumption, as to their intention in the premises." [Ashton Realty Company v. Prowell, 165 La. 328, 115 So. 579, 581 (1928)]
The evidence indicates that Prisock did not intend to renew or create a new lease with Boyd. Although Boyd denies any notice was given the evidence sufficiently establishes that prior to the end of the thirty day period following November 1, 1966, he was made aware of the fact that the property would not be leased to him for the crop year 1967. Adequate proof appears in the record to justify the granting of injunctive relief for the purpose of preventing irreparable injury.
We find it unnecessary to give consideration to the effect of registry of relators' lease which was recorded but a few days before this suit was filed.
It is our conclusion that relators are entitled to a preliminary injunction and this is a case in which we should exercise our supervisory powers to the end that no irreparable injury may be done relators pending a final decision of the case.
For the reasons assigned it is ordered that the preliminary writs granted in this case on the 21st day of April, 1967 be and are hereby made peremptory and accordingly, the Honorable J. Vernon Sims, Judge of the Fifth Judicial District Court for the Parish of West Carroll, is directed and commanded to grant forthwith to relators in this case a preliminary writ of injunction as prayed for by them, the writ to remain in force and effect until the final decision of the case.
Liability for costs of this appeal are taxed against respondent and other costs are deferred pending the outcome of other proceeding.