493 So.2d 271 (1986)
James L. MISSE and Wilma Misse, Plaintiff-Appellant,
v.
Darryl R. DRONET and Mary Ann Dronet, Defendant-Appellee.
No. 85-728.
Court of Appeal of Louisiana, Third Circuit.
August 21, 1986.
*272 Karl E. Boellert, Lake Charles, for plaintiff-appellant.
Scofield, Bergstedt, Benjamin W. Mount, Lake Charles, for defendant-appellee.
Before STOKER and YELVERTON, JJ., and BERTRAND [*], Judge Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tempore.
Plaintiffs appeal from a judgment in favor of defendants in this action for alleged rentals and damages arising out of an agreement of lease entered into in 1978 between the parties to this action.
In July, 1978 a lease for a commercial building located on one of the main thoroughfares in the City of Sulphur and owned by plaintiffs was duly executed by the parties. The lease was for a primary term of five (5) years, ending June 30, 1983 with renewal options for two (2) additional periods of five (5) years each. Thereafter, the parties operated under the express terms of this written lease through the five (5) year term of the contract until its termination on June 30, 1983.
According to the terms of the lease, the right of the lessee to renew the contract between the parties expired sixty (60) days prior to the end of the contract or on May 1, 1983. The lease also provided that the exercise of any option to renew the written contract of lease by the lessee was required to be in writing. In the absence of a written renewal of the lease any holding over by the lessee was not to extend or renew the lease but the lessor could consider such occupancy to be month to month. If such holding over occurred without lessor's consent, the lessee was liable for double rent for the extended period of occupancy.
We adopt the following findings of the Trial Judge:
"The terms of the lease are clear and unambiguous insofar as it describes the manner for exercising the option to renew. Paragraph 4 specifically requires the Lessee to provide notice of his election to renew at least sixty days prior to its termination, and paragraph 22 specifically requires that any notice given under the lease by the lessee be given in writing.
"No such notice was given by lessee either in writing or even verbally prior to the termination of the primary term of the lease, much less sixty days prior thereto. Plaintiffs do not contend otherwise. Plaintiffs do not contend that there was even any discussion between the parties of the renewal of the lease prior to the termination date of the primary term. Instead, plaintiffs contend that Misse and Dronet verbally agreed after the termination date of the primary term that the lease would be renewed for an additional five years. Plaintiffs have fallen far short of carrying their burden of proving such an agreement.
"Whatever discussions they had concerning the lease dealt primarily with the amount of the monthly rental to be paid. *273 (They agreed upon an amount that was more than the fifth years rental, but less than that provided for in the written lease for the five year renewal term.) When Misse suggested the monthly rental of $850.00 per month, which was accepted by Dronet, he testified he, Misse, used the words for the duration of the lease. At no time did he testify that they specifically talked about a five year term, or about `renewal', or that Dronet specifically said he wanted to renew, or that he specifically agreed to a renewal of the lease, or that he, Misse, agreed to be bound for another five years, or that they discussed the failure to exercise the option in writing. He testified about assumptions that he made, such as, he considered Dronet's payment of July, 1983, rental as `notice that he wanted to stay', notwithstanding Dronet's failure to give notice in writing of his exercising his option. He assumed that when he suggested a monthly rental figure `for the duration of the lease', that it was understood he was talking about the duration being another five years.
"If assumptions are to be made, it is more reasonable to assume that Misse knew Dronet had not exercised his option, that he, Misse, could not hold Dronet to another five year lease term, that he could evict Dronet, but since he had no other prospective lessee, this would not be to his advantage. He, therefore, in order to salvage what future rental he could, agreed to a monthly rental of $850.00, and did not press the issue of the term of the lease and insist that Dronet specifically agree to a five year term.
"There are inconsistencies with Misse's contention and other facts. Misse is a businessman. He has other rental properties. He is educated. He had retained counsel to represent him in negotiating and drafting the lease. Numerous conferences were held between the attorneys for both sides in negotiating and preparing the lease. Drafts of proposals and counter-proposals had been exchanged. Why would he then handle a mutually binding renewal in such a loose manner as that described by him?
"On the other hand, Dronet denied that he had ever agreed to a five year renewal. Instead, he testified that he and Misse agreed to a month-to-month rental at $850.00 per month.
"Whatever the agreement was, if in fact there ever was a meeting of the minds, the burden is on Misse to prove there was a five year renewal agreement, and as stated above, he has failed to carry this burden of proof."
Plaintiffs instituted this suit for rentals allegedly due from September 1, 1984 through June 30, 1988 contending that Dronet verbally exercised his option to renew the lease for a second five (5) year term.
As an alternative basis for recovery of damages plaintiffs assert that, if the written contract of lease was not renewed, the plaintiffs are entitled to invoke the provisions of the expired written lease agreement allowing the penalty rental payments.
The record is devoid of any evidence indicating a renewal of the lease contract and no document evidencing any such intent was prepared by defendants. All conversations relative to defendants' continued use of the premises occurred after the expiration of the contract on June 30, 1980 and thus necessarily subsequent to the extinguishment of the option to renew on May 1, 1983.
The trial court found that no such notice was given verbally prior to the expiration of the option to renew nor prior to the termination of the primary term and that legal reconduction took place.
To have a tacit reconduction in Louisiana it is necessary that the lease has expired, that the lessee remain in possession for more than a week, that the lessor consent to his remaining in possession of the premises or not have given him notice to vacate. LSA-C.C. Art. 2689; 39 Tulane Law Review 798, 813-814; Governor Claiborne Apartments, Inc. v. Attaldo, 235 So.2d 574 (La.1970). The reconducted lease is actually a continuation of the original *274 lease in all respects except that the fixed terms or period of duration under the old lease is voided and the reconducted lease is considered to be by the month. LSA-C.C. Art. 2685, 2686, 2689; Governor Claiborne Apartments, Inc. v. Attaldo, supra.
Although a presumption exists that a lease is reconducted on a month to month basis if the lessee remains in possession beyond the term of the lease, the jurisprudence has unequivocally held that the presumption of reconduction is inoperative in the face of the clear intention of the parties to the contrary. Talambas v. Louisiana State Board of Education, 401 So.2d 1051 (La.App. 3d Cir.1981); Kogos v. Lemann, 285 So.2d 548 (La.App. 4th Cir.1973), writ refused, 288 So.2d 648 (La.1974); Prisock v. Boyd, 199 So.2d 373 (La.App. 2d Cir. 1967); Jacobi v. Toomer, 164 So.2d 610 (La.App. 3d Cir.1964); Ashton Realty Co. v. Prowell, 115 So. 579 (La.1928). The presumption is not to be used to force a contract upon parties unwilling to contract, but merely to establish a rule of evidence, or a presumption, as to their intention when a contrary intent has not been expressed. Ashton Realty Company v. Prowell, supra. Consequently, any intention not to renew the lease on the same terms defeats reconduction. Divincenti v. Redondo, 486 So.2d 959 (La.App. 1st Cir. 1986); Prisock v. Boyd, supra. When by agreement the price is changed, a new price and a new consent are created. The only essential feature remaining the same is the occupancy of the thing. LSA-C.C. Art. 2670, Weaks Supply Company v. Werdin, et al, 147 So. 838 (La.App. 2d Cir.1933) and 154 So. 378 (La.App. 2d Cir. 1934); see also Maxwell, Inc. v. Mack Trucks, Inc., 172 So.2d 297 (La.App. 4th Cir.1965); writ refused, 247 La. 717, 174 So.2d 131 (La.1965).
In Weaks Supply Co., supra, the Second Circuit specifically rejected the trial court's reliance on the common law proposition that an agreed change in the monthly rental was a mere modification of an existing lease and found that the change "did, in so far as the law governing a tacit reconduction is concerned, constitute a new lease." The trial court is correct in determining that a reconduction took place at the expiration of the primary terms on June 30, 1983. Defendant testified that he paid the same rent of $700.00 for July as he had paid for June which was the interim period before a new agreement as to the amount of rent was reached. In August, 1983 plaintiff and defendant reached an agreement to increase the monthly rental to $850.00. At that time the continuity of the original lease as reconducted, ceased. When the lessor increased the monthly rental a new contract of lease existed between the lessor and lessee.
Whether this month-to-month continuation of the prior agreement is viewed as a reconduction or, alternatively, as a separate, new agreement for the month-to-month rental of the premises, the result is the same. The agreement was reached, the Dronets as lessee made the agreed upon rental payments, which were accepted without discussion by the lessor and finally the lessee gave timely notice of intent to vacate the premises at the end of July, 1981.
Contracts are not presumed, therefore the option or right to renew a lease is never presumed. Governor Claiborne Apartments, Inc. v. Attaldo, supra.
Our Civil Code provides:
"A party who demands performance of an obligation must prove the existence of the obligation.
"A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction." LSA-C.C. Art. 1831 "If the renting of a house or other edifice, or of an apartment, has been made without fixing its duration, the lease shall be considered to have been made by the month." LSA-C.C. Art. 2685.
As was mentioned earlier, the trial court found that plaintiffs failed to prove an agreement for renewal of the lease for five (5) years.
*275 Plaintiff contends that the trial court erred in placing upon him the burden of proving an agreement to renew the lease for five (5) years and thereby denied Misse relief because of his failure to sustain that burden. Plaintiff concludes that the burden should have been placed on Dronet to prove that he and his landlord had agreed on a cancellation or that a reconduction took place. Plaintiff also concludes that because defendant is the party who asserts that an existing obligation has been modified or extinguished and that a new obligation has taken its place he has the burden of proving such. In so arguing plaintiff does not take into account several important facts that ultimately cause his contentions to fail. At the time plaintiff and defendant agreed to the increase in rent in August, 1983 the primary term of the lease and necessarily the deadline to exercise the option to renew the lease had expired by operation of law. The defendant had not acted affirmatively by written notice, as required by the lease, to renew this contract. Furthermore, there were no actions or conduct of any kind to indicate a renewal or extension of the lease.
In light of the express provision of the lease contract providing for its termination and the above cited provisions of Louisiana law and jurisprudence there can be no doubt that the burden of proving an oral agreement that extended the provisions of the lease contract must fall on plaintiff.
For the foregoing reasons, the judgment of the Trial Court is affirmed. Costs to be paid by appellant.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr. of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.