# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 03-378

**ROBERT KITE**

**VERSUS**

**FELICIA CARTER AND COLONIAL INS. CO.**
**OF CALIFORNIA**

**********
APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-97-0374 "A"
HONORABLE STUART S. KAY  JR., DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and Glenn B. Gremillion, Judges.

**JUDGMENT RENDERED.**

**Randall Scott Iles**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**Counsel for Plaintiff/Appellant**
        **Robert Kite**

**Mesonie Terrence Halley, Jr.**
**Pitre, Halley & Sikich**
**702 Kirby Street**
**Lake Charles, LA 70602-3756**
**(337) 494-0800**
**Counsel for Defendant/Appellee**
        **Felicia Carter**
        **Colonial Ins. Co. of CA**

**Mitchel Mark Evans, II**
**416 North Pine Street**
**DeRidder, LA 70634**
**(337) 462-5225**
**Counsel for Third Party Defendant/Appellee**
      **Smith's Car Wash**
           **Howard Smith**
           **Marlin Jantz**

GREMILLION, Judge.

The plaintiff, Robert Kite (Kite), appeals the trial court's directed verdict in favor of the defendants, Colonial Insurance Company of California and its insured, Felicia Carter. For the following reasons, we render a judgment of involuntary dismissal in favor of Colonial and Carter.

**FACTS**

On August 3, 1996, Carter ran a stop sign at the intersection of Pine Tree Lane and East First Street in DeRidder, Louisiana, and struck a building operated as Smith's Car Wash. The building was located on land originally owned by George Kite. On March 1, 1967, George leased the property to Howard Smith, the operator of Smith Car Wash, Inc. The lease of the property was for $140 per month, for a term of five years, and terminating on February 28, 1972. The lease provided in pertinent part:

6.

The LESSOR retains the LESSOR'S lien provided by law upon all property and equipment of the LESSEE upon the premises, and in addition thereto, it is stipulated that the LESSEE shall not remove from the premises that equipment this date purchased by LESSEE from LESSOR, more particularly described in a bill of sale and chattel mortgage executed of even date herewith to secure a note from LESSEE to LESSOR until said purchase money note has been paid and satisfied in full.

7.

The LESSOR grants to the LESSEE the right to take and remove from the premises at the end of the full five (5) year term of this lease, the building and improvements situated upon the leased property, except the foundation slab of said building. It is stipulated that removal of the improvements so granted in this paragraph shall be without damage to said foundation or to the premises.

1

At the termination of the five-year term, the parties continued the lease on a month-to-month basis under the terms of the original lease. George died on May 4, 1977. After George's death, Smith continued paying the rental amount to his wife, Billy, and then to his son, Kite, in the name of his estate. Sometime after George's death, his wife increased the monthly rental from $140 to $200 per month. Smith continued paying this amount until October 1996, even though the car wash was no longer operable due to the damage caused by Carter. On September 24, 1996, Smith notified Kite in writing that he intended to discontinue his car wash operations and that he intended to remove the building out of which he operated the business. In response, Kite informed Smith, via a September 25, 1996 letter, that the March 1, 1972 lease had terminated, that he was the owner of the building, and that Smith owed him several thousand dollars for rent from 1972 through September 25, 1996. Thereafter, Smith abandoned the building.

On April 21, 1997, Kite filed suit against Carter and Colonial seeking monetary damages for the property damage sustained by the building located on East First Street. In its answer, Colonial stated that it had paid $10,000 in response to a demand by CNA Insurance Company for reimbursement of amounts paid by it to its insured, Smith Car Wash, and its owners, Smith and his son-in-law, Marlin Jantz. Thereafter, Colonial and Carter filed a third-party demand against CNA, Smith, and Jantz. Smith and Jantz answered the third-party demand alleging that George had conveyed the building and car wash equipment to Smith on the same date he entered into the lease of the named property, as evidenced by the lease which mentions the bill of sale and chattel mortgage. They further introduced a Notice of Filing of the

2

chattel mortgage in the Beauregard Parish public records on March 14, 1967, and the cancellation of the chattel mortgage by prescription on November 24, 1997.

Kite filed a motion for summary judgment on the issue of liability, damages, right of subrogation, bad faith, and excess damages. Following a hearing on the motion, the trial court granted summary judgment in favor of Kite on the issue of liability, but referred the remaining issues to the trial on the merits. During the trial on the merits, Smith, Jantz, Carter, and Colonial moved for a directed verdict following the close of Kite's evidence. The trial court granted the directed verdict and dismissed Kite's claims against Colonial and Carter. All other claims were rendered moot as a result. A judgment in this matter was rendered on November 11, 2002. This appeal by Kite followed.

## ISSUES

On appeal, Kite raises one assignment of error arguing that the trial court erred in finding that the March 1, 1967 lease between Smith and George had reconducted even though it exceeded its terms, the original lessor had died, and the rental amount had changed. Although we agree that the original lease terminated at the time the lease amount changed, we still find that Smith was the owner of the building located on the leased property at issue.

## RECONDUCTED LEASE

In *Misse v. Dronet*, 493 So.2d 271, 273-74 (La.App. 3 Cir. 1986) (citations omitted), we stated:

> To have a tacit reconduction in Louisiana it is necessary that the lease has expired, that the lessee remain in possession for more than a week, that the lessor consent to his remaining in possession of the premises or not have given him notice to vacate. The reconducted lease

3

> is actually a continuation of the original lease in all respects except that the fixed terms or period of duration under the old lease is voided and the reconducted lease is considered to be by the month.

We further stated that when, by agreement, the rental amount is changed, a new rental amount and a new consent is created. *Id.* Thus, the old lease terminated and a new one was created in its stead.

In the instant case, the trial court held that the 1967 lease was reconducted at the end of the original five year term on a month-to-month basis, with an adjustment of the rent amount from $140 to $200 per month. Thus, it held that all of the terms and conditions of the original lease continued in the reconducted lease, even after the parties agreed to the increase in the rent. This finding is clearly wrong. Once Billy and Smith agreed to increase the monthly rental from $140 to $200, a new lease was created and all of the terms of the original lease ceased. However, after conducting a de novo review of the record, we still find that Smith is the owner of the building located upon the leased premises and render judgment dismissing Kite's claim with prejudice.

### INVOLUNTARY DISMISSAL

Although Smith moved for and was granted a directed verdict, the proper procedural motion was for an involuntary dismissal. The procedure for an involuntary dismissal is provided for in La.Code Civ.P. art. 1672. If the matter is tried as a bench trial, the defendant may move for a dismissal of the plaintiff's action at the close of the plaintiff's case, based on the "ground that upon the facts and law, the plaintiff has shown no right to relief." La.Code Civ.P. 1672(B). At that point, the trial court may either render judgment or decline to render judgment until the close

4

of all evidence. *Id.*

The trial court is accorded much discretion in the granting of an involuntary dismissal. *Guillory v. Int'l Harvester Co.*, 99-593 (La.App. 3 Cir. 10/13/99), 745 So.2d 733, *writ denied*, 99-3237 (La. 1/14/00), 753 So.2d 220. It is required to weigh and evaluate all of the evidence presented by the plaintiff and grant the dismissal if the evidence is sufficient to establish that the plaintiff has not proven his claim by a preponderance of the evidence. *Id.* The grant of an involuntary dismissal is subject to the manifest error standard of review. *Id.*

Louisiana Civil Code article 464 provides that a building is a separate immovable when it belongs to someone other than the owner of the ground upon which it stands. Louisiana Civil Code article 491 provides that a building is presumed to belong to the owner of the ground, unless an instrument evidencing separate ownership is filed for registry in the conveyance records of the parish in which the immovable is located. Moreover, the law requires that immovable property be transferred by authentic act or by act under private signature. La.Civ.Code art. 1839. An oral transfer is valid if actual delivery has occurred and the transferor recognizes the transfer when questioned under oath. *Id.* However, if a written contract is required by law, "the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen." La.Civ.Code art. 1832.

In this instance, Smith alleged that he purchased the building located on the leased property, and the equipment located therein, pursuant to a written bill of sale and chattel mortgage executed the same date as the lease. However, in his

5

answer to the third-party demand, he stated that the original bill of sale and chattel mortgage had either been lost or stolen. In support of his allegation, he introduced a copy of the original lease, a Notice of Filing from the Beauregard Parish Conveyance Records evidencing that a chattel mortgage from Smith to George was filed on March 14, 1967, bearing file number 186418, and a cancellation by prescription of the same chattel mortgage in the amount of $65,000, on November 24, 1997.

Smith testified that he purchased the car wash business and its equipment from George on the same date that the lease was executed in 1967. However, he could not recall whether this was reduced to writing or where the documents were located. He stated that he made payments for the purchase over a period of five years to the First National Bank in DeRidder. At the end of that time, he stated that he believed that he was the owner of the building and the equipment. However, he could not recall receiving a canceled chattel mortgage. Smith testified that George never participated in the profits and losses of the business, he never made any improvements to the structure or the property, nor did he require Smith to insure the property. He stated that all of the equipment originally purchased in 1967 had been replaced due to general wear and tear. He further testified that the business was damaged by a tornado after George's death, but that no claim was made by Kite to the insurance proceeds used to repair the structure. Smith stated that the first notice he received from Kite concerning the ownership of car wash equipment and the building was in the September 26, 1997 letter.

6

Jantz testified that he started working at the car wash in 1994, and that he took over the operations sometime after Smith incorporated his business in 1997. He testified that they were in the process of remodeling the car wash prior to the August 1996 accident, and had purchased $20,000 worth of new equipment through financing from Beauregard Federal Savings Bank. He stated that the equipment they were replacing was not the original equipment purchased in 1967. Jantz testified that the equipment damaged as a result of the August 1996 accident was repaired with the insurance money received from its insurer. He stated that Kite never offered to pay for the remodeling, refurbishing, or repairs to the equipment or property.

Jantz testified that he talked to Kite several times about entering into a long-term lease or selling the property. He stated that their discussions never concerned the purchase of the equipment, since Smith informed him that he already owned the equipment. He further stated that no one representing George's estate ever contacted them about insuring the equipment pursuant to the lease. Moreover, the insurance settlement proceeds were not issued in Kite's name. After they decided to relocate the car wash, Jantz stated that they notified Kite of their intent not to renew the lease. In the September 26, 1997 letter, Kite informed them that he owned the building and that they owed him rent for the building. Jantz testified that they viewed the building as belonging to them, and that they never acknowledged that Kite owned either the building or the equipment located therein.

After reviewing the evidence, we find that Kite has failed to prove that he is the owner of the building located on the leased property. While a building is considered an immovable and is presumed to belong to the owner of the ground upon

which it is located, we find that the evidence proves that this building is the separate property of Smith. Although the bill of sale and chattel mortgage were either lost or destroyed, we find that they were sufficiently proven by parole evidence through the testimony of Smith and Jantz and through the original lease agreement, which mentions that a bill of sale and the chattel mortgage were executed on the same day as the lease. Further evidence affirming the existence of the sale is presented by the notice of filing of the chattel mortgage and the cancellation of the chattel mortgage from the Beauregard Parish Clerk of Court's records. Since Kite has failed to contradict this evidence, we find that he has failed to establish his claim by a preponderance of the evidence. Accordingly, we grant the motion for involuntary dismissal and render judgment in favor of Carter and Colonial. The third party demand by Carter and Colonial against Smith and Jantz, and their insurer, CNA, is rendered moot.

## CONCLUSION

For the foregoing reasons, we order, adjudge, and decree that a judgment of involuntary dismissal be granted in favor of the defendants-appellees, Colonial Insurance Company of California and Felicia Carter. The third-party demand against the third-party defendants, Howard Smith, Marlin Jantz, and CNA Insurance Company, is rendered moot. The cost of this appeal is assessed against the plaintiff-appellant, Robert Kite.

**JUDGMENT RENDERED.**

8