STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-341


CAROL GAUTHIER, ET AL.

VERSUS

CITY OF NEW IBERIA, ET AL.


**********
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 90032-B
HONORABLE PAUL J. DEMAHY, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion, Judges.


**AFFIRMED.**

**John Jefcoat**
**Galloway & Jefcoat, L.L.P.**
**P. O. Box 61550**
**Lafayette, LA 70596-1550**
**(337) 984-8020**
**Counsel for Plaintiffs/Appellants:**
    **Carol Gauthier**
    **Donald Gauthier**

Steven J. Bienvenu
Dauzat, Falgoust, Caviness, and Bienvenu, L.L.P.
P. O. Box 1450
Opelousas, La 70571
(337) 942-5811
Counsel for Defendant/Appellee:
     City of New Iberia

Ted D. Hernandez
Assistant Attorney General
Louisiana Dept. of Justice Risk Litigation Division
556 Jefferson St., 4th Floor
Lafayette, LA 70501
(337) 262-1700
Counsel for Defendant/Appellee:
     State of LA, Through The DOTD

GREMILLION, Judge.

In this case, the plaintiffs, Carol and Donald Gauthier, appeal the judgment of the trial court granting an involuntary dismissal in favor of the defendants, the City of New Iberia and the State of Louisiana, through the Department of Transportation and Development. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Gauthiers filed suit against New Iberia in November 1998, claiming that on November 13, 1997, Carol was injured when she slipped and fell on an unreasonably sloped and uneven sidewalk located near or at 249 St. Peter Street in New Iberia, Louisiana. In July 2001, the Gauthiers filed an amended petition adding the State as a defendant.

Following a two day trial in July 2005, New Iberia and the State made motions for involuntary dismissal, which were granted. The Gauthiers now appeal and assign as error the trial court's determination that the Gauthiers must prove a defect in the surface of the sidewalk by indicating that a particular "standard" was breached.

## DISCUSSION

New Iberia and the State's liability is governed by La.Civ.Code art. 2317 as limited by La.R.S. 9:2800. Louisiana Civil Code Article 2317 states in part:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.

Louisiana Revised Statute 9:2800(C) states in part:

Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and failed to do so.

The State is not liable for every irregularity or defect in a sidewalk that causes injury, but only for those that pose an unreasonable risk of injury. *See Clark v. Hartford Acc. and Indem. Co.,* 562 So.2d 50 (La.App. 3 Cir. 1990). In order to decide what constitutes an unreasonable risk of harm, the fact finder must weigh the social utility of the thing versus the likelihood and severity of harm. *Id.*; *see also Oster v. Dep't of Transp. and Dev., State of La.,* 582 So.2d 1285 (La.1991). Whether or not the defect posed an unreasonable risk of harm must be decided on the particular facts and circumstances of the case. *Clark*, 562 So.2d 50. If it is determined that the condition presented an unreasonable risk of harm, the notice requirement of La.R.S. 9:2800 must be satisfied. *Id.* The plaintiff bears the burden of proving by a preponderance of the evidence that the public body/State was at fault. *Id.* Moreover, a pedestrian has a duty to see that which should be seen and exercise ordinary care in her travels. *Id.*

Louisiana Code of Civil Procedure Article 1672(B) states in pertinent part:

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until

2

the close of all the evidence.

Pursuant to Article 1672, the trial court must consider and weigh the plaintiff's evidence and dismiss the matter if it determines that she has not met her burden of proof. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271. The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review. *Id.* Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. *Id.*

### EVIDENCE

Joe Lee Boles, who was the Director of Public Works for New Iberia in 1997, testified that it was his job to oversee the maintenance of the infrastructure of the city, including streets and sidewalks. He stated that the driveway where Carol fell has existed for about seventy-five years and that there was no history of difficulties or problems with the driveway. He stated there are hundreds of driveways in New Iberia designed exactly like the one in question that are in substantially the same condition as the area in question.

Benjamin Pooler, an environmental safety and health consultant and safety expert, testified that he examined the area where Carol fell after it had been repaired. Poole testified that he estimated the slope of the sidewalk to be between 38 and 45 degrees. He stated that the Americans with Disabilities Act (ADA) applied

3

to this case because the ADA went into effect in January 1992. The ADA standard for slopes in a sidewalk is 4.76 degrees. He stated that the slope in question did not meet the standards of the ADA. He also determined, from photographic examination, that wear on the concrete caused the rocks to protrude and that moisture on the rocks caused them to become slick.

On cross-examination, Pooler was unable to cite any source requiring New Iberia to retrofit previously existing sidewalks up to ADA standards once it was passed in 1992. He further testified that sidewalks with slopes of 38 to 45degrees or more are not uncommon in any city and that it would be impractical for a city to make every driveway meet the 4.76 slope standard. Pooler testified that he did not research any construction standards for driveways at the time that this one was built, sometime in the late 1950s or early 1960s. He also admitted that Carol was in perfectly good health and was not wheelchair bound at the time of the accident. Pooler agreed that the sidewalk in question was frequented by pedestrian traffic and that the incline or decline of the driveway was apparent to any pedestrian walking along the sidewalk. He testified that these types of driveways exist all over New Iberia and that it would be very expensive to retrofit them all, but that paint would be an inexpensive way to caution pedestrians.

Fred Wesley, a business owner in the area where Gauthier fell, testified that he saw another person fall in the same area that Gauthier did, although he did not know the year. He stated that he called City Hall and alerted them to pay attention to that particular sidewalk and driveway. However, on cross-examination, he said that he made that call in June, but he did not know in what year or to whom he spoke.

4

Several other witnesses testified pertaining to who actually owned and controlled the sidewalk in question. Additionally, we reviewed the photographic evidence of the sidewalk. However, no other testimony was presented to show that a defect existed in the sidewalk which was unreasonably dangerous. In granting the motion for involuntary dismissal, the trial court stated:

> With regard to the applicability of the American Disabilities Act, the act itself, as well as the state statute, indicate that its purpose is to provide access to persons with disabilities. It does not establish standards to protect any class of persons from any design of any facility. It's not a statute that establishes a duty to protect anyone. It's a statute that establishes a duty to provide access. So, applying the American Disabilities Act to this situation would be inappropriate. Without going into retrofitting, the applicable date of the statutes, it's not designed for that–I mean, that's not the purpose of the statute. The purpose of the statute by its very statement is to provide access to persons with disabilities. Ms. Gauthier had no disabilities and there's not an issue of failing to establish to provide accessibility to someone with a disability, so the ADA does not apply at all.

> With regard to the slope being inappropriate based on other standards, Mr. Pooler said it was too steep, but the only standard that he cited was the ADA. He didn't cite any other standard by any other organization, or any other building codes as to what the slope should be for purposes of safety.

> With regard to the surface, whether the surface was slippery or not, he was unable to test the co-efficient of friction on the surface because it had been changed, and again, did not cite any standard from any organization or any code regarding what the co-efficient of friction should be and whether to allow exposed gravel would be in violation of any standard established by any organization or any governmental agency.

> For these reasons, I feel the plaintiff has failed to prove a defect in the surface.

We agree and find no manifest error in the trial court's finding. The Gauthiers argue that the trial court wrongly required that they prove that a particular "standard" was breached. We disagree. We find the trial court's ruling very clear in

5

that it found that the ADA had no application whatsoever to this case and that no other evidence was presented to suggest that a defect existed. The Gauthiers contend that any time a person falls down, a defect exists in the surface on which they are traveling. On the contrary, a party must prove, by some means, that a defect existed. Simply, the Gauthiers failed to prove their case by a preponderance of the evidence. Other than Wesley's vague testimony, which could have easily been discounted by the trial court, there was, essentially, no evidence that there was any defect in the sidewalk, much less, that an unreasonably dangerous defect existed. Accordingly, the involuntary dismissal was properly granted by the trial court.

## CONCLUSION

The judgment in favor of the defendants-appellees, the City of New Iberia and the State of Louisiana, through the Department of Transportation and Development, is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants, Carol and Donald Gauthier.

**AFFIRMED.**