NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-465

HATTIE YOUNG AND ALFRED PITRE

VERSUS

KIM BOURGEOIS, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 79037-A (B)
HONORABLE CHUCK RANDALL WEST, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Candyce G. Perret, and Sharon Darville Wilson, Judges.

AFFIRMED.

**Anthony Craig Dupre**
**Post Office Drawer F**
**Ville Platte, LA   70586**
**(337) 363-3804**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Kim Bourgeois**

**Donald Lynn Mayeux**
**Post Office Drawser 1460**
**Eunice, LA   70535**
**(337) 457-9610**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
      **Hattie Young**
      **Alfred Pitre**

**Michael Fontenot**
**1094 Dossman Lake Road**
**St. Landry, LA   71367**
**OTHER DEFENDANT:**
      **In Proper Person**

**PERRET, Judge.**

This appeal involves alleged property and personal damages sustained by Hattie Young and Alfred Pitre due to tree limbs that fell on their mobile home when Defendant, Michael Fontenot, was trimming a tree on a neighboring property. The neighboring property allegedly belonged to Defendant, Kim Bourgeois. On appeal, Plaintiffs seek review of the judgment dismissing Bourgeois with prejudice. After review, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND:**

Plaintiffs filed suit on November 12, 2020, alleging that on November 15, 2019, Fontenot was trimming a tree on property belonging to Bourgeois when the limbs fell on to Pitre's mobile home. Young, who was home at the time, alleged she sustained "initial trauma," medical expenses, and "a long period of pain and suffering," which included headaches and anxiety. In their petition, Plaintiffs sought to hold Bourgeois liable pursuant to the theory of vicarious liability, asserting that Fontenot was an employee of Bourgeois "performing arborist activity without a license." Otherwise, the petition alleged the sole negligence of Fontenot. While Bourgeois was served with the petition and responded, Fontenot has not participated in these proceedings.[1]

Bourgeois answered the suit and asserted several defenses: any damage was preexisting or caused by others, Plaintiffs failed to mitigate their damages, the petition does not state claims against Bourgeois upon which relief can be granted, and claims are barred by estoppel and the unclean hands doctrine. On September 6,

---

[1] We cannot determine from the record whether Fontenot was served. While a comment in brief suggests he was not, the record shows only that Plaintiffs requested service on Fontenot along with Bourgeois. There is nothing indicating whether service was effectuated.

2022, Bourgeois filed an amended answer, which denied that evidence existed that justified a claim that Fontenot was employed by Bourgeois.

Trial was held on April 25, 2023. The parties stipulated to the police report detailing the events that occurred when Officer Cedric Jackson was dispatched to Plaintiffs' residence on November 15, 2019. The narrative indicates that Officer Jackson spoke with Young, who stated that she opened her back door and saw Fontenot cutting down a tree on property belonging to "Tim"[2] Bourgeois. She returned to her bedroom and soon thereafter heard a loud noise on the top of the home. When she got up to look outside, she could not open her back door. Officer Jackson also spoke with Pitre, who saw the branch on his property. Tammy Charles, who lived nearby, also provided a verbal statement, telling Officer Jackson that she witnessed the tree hit Pitre's residence. Officer Jackson then spoke with Fontenot, who admitted that he was cutting pecan branches for Bourgeois "at his rent house." The second branch was longer than he thought, and it came into contact with Pitre's roof. Officer Jackson noted that he observed "small branches on top of the roof" and "obtained photos of the branches on the roof." However, there are no photos of the branches on the roof of the Pitre residence in the record.

Plaintiffs called David Hinton with the Louisiana Department of Agriculture and Forestry at trial. Hinton testified that he was contacted to investigate a possible unlicensed arborist and conducted his investigation on December 3, 2019. During his investigation, he took photos and spoke with Pitre, who provided a written statement. Hinton attempted to speak with Bourgeois, but Bourgeois refused to cooperate. On December 4, 2019, Hinton met with Fontenot, who said he did not

---

[2] In the report, the typed "T" is crossed out and replaced with a handwritten "K."

2

receive pay and was not hired by Bourgeois to cut the pecan tree. Instead, Fontenot, who also provided a written statement,[3] stated that it was he who contacted Bourgeois and requested to cut the wood for his personal use. In Hinton's report, which was admitted into evidence, Hinton concluded, "Mr. Fontenot was not hired by Mr. Bourgeois, but was merely cutting trees on Mr. Bourgeois's property to use for firewood with permission."

Tammy Charles's trial testimony was in accordance with her statement to the police. She testified that she witnessed Young look out her back door while Fontenot was cutting the tree. Once Young went back inside, a tree limb fell on the mobile home. Charles also testified that she saw Bourgeois watching the incident from his business, located across the street, and that before the police arrived, Bourgeois got in his truck and drove away.

Plaintiffs also called two witnesses, who came to the property to provide estimates for repairs for damage allegedly caused by the falling tree limbs, to testify. None of the repairs for which estimates were received had been conducted as of the date of trial. On October 2, 2020, Kevin Cormier of Ramjack Foundation Repair observed that the mobile home was unlevel from approximately midway to the opposite end of the home, and he saw some cracked supports and a cracked ceiling. He testified that because the mobile home is built on two main beams, the whole home would need to be releveled to ensure it doesn't teeter and rock. While he testified that he does not know what caused the home to be unlevel, it was his understanding that the house was unlevel from the location of where a tree hit to the

---

[3] Fontenot's written statement is not attached to the exhibit entered into evidence.

rest of the home. The document with his estimate was ruled inadmissible because it was not produced in discovery.

Chad Perry, Chief Operations Officer for EZ Baths of Louisiana, testified regarding EZ Bath's business records in regard to Plaintiffs. He testified that EZ Bath received a phone call that there was a leak under Pitre's tub. Perry testified that they are not a "fix it" company but that the installation of a new shower or tub would also fix underlying problems such as leaks during the tear out. Plaintiffs were given an estimate of $10,985.00 to tear out the existing tub and shower combination, surrounding wall, and plumbing, and to install a walk-in shower in its place. Perry testified that the business records do not indicate that there was any damage to the unit and do not provide any information regarding the bathroom location in relation to a tree that had fallen.

Plaintiffs also attempted to introduce an estimate provided by Chris Ardoin from Reliable Plumbing, who was unavailable due to surgery. While the trial court deemed the estimate inadmissible, testimony regarding the estimate as well as a picture was proffered. During the proffer, Pitre testified that the estimate was for $1,800.00 to repair broken water lines under the sewage. However, despite the information being a proffer, the trial court based its final damages awarded to Pitre on this amount, stating:

> I have some pictures of some pipes that was [sic] was leaking, and Mr. Pitre testified that he had pipes leaking. He got an estimate, from Reliable Plumbing; change broken water pipes under the beam, uh open walls to repair the leaks on the shower, I believe that happened. It makes sense, they testified it shook. That's $1,800 dollars, I'm granting them that.

Pitre further testified regarding the state of the trailer prior to and after the incident. He stated that the home had no dents prior to the incident and that the

4

second bathroom tub only started leaking after the incident. Pitre explained that the mobile home is eighty (80) feet long and that the tree limb fell approximately at the halfway mark. The damaged bathroom is on the opposite end of the home. His insurance paid to repair damage to the roof. Pitre also admitted that since this incident, two additional occurrences of trees falling on the home occurred in 2020 and 2021.

Young testified in accordance with her statement to police but added that she fell to the floor from her bed after the tree limb fell on the home and then crawled to the back door. She testified that she has since suffered with headaches, anxiety, and nightmares about the tree falling again. She was treated in urgent care several days after the incident and has taken the prescribed medication since. However, Young paid out of pocket for the medications and had no receipts to introduce into evidence.

Both Pitre and Young's depositions, which included several photographs of the mobile home, pipes under the home, the bathroom, and tree debris on the ground, were admitted into evidence. There are no photographs of the tree on or touching the home.

At this point in the trial, Defendant moved for a dismissal. While Plaintiffs' counsel indicated that he had additional information to elicit from Bourgeois when he was called by the defense, Plaintiffs did not call Bourgeois during their case-in-chief, and the trial court stated that Plaintiffs had rested prior to a recess.[4] The trial court noted that the petition only alleged fault by Fontenot for his negligence in cutting the tree and attached liability to Bourgeois via vicarious liability. Thus, the

---

[4] The record does not include a statement by Plaintiffs prior to the recess that they intended on resting. However, counsel did not object when the court made this statement, and, at this time, Plaintiffs had called all their witnesses that had been previously announced and sworn in by the court.

5

petition only alleged fault based on La.Civ.Code art. 2320, but the court also considered Plaintiffs' arguments for fault based on La.Civ.Code art. 2317.1.[5] However, the trial court noted that La.Civ.Code art. 2317.1 requires the "ruin, vice, or defect" of the tree, in this case, and no evidence was presented that showed a ruin, vice, or defect of the tree. Additionally, there was no evidence that Bourgeois hired Fontenot or paid Fontenot. Instead, the evidence showed that Fontenot approached Bourgeois and sought permission to trim the tree branches for his own personal use. Thus, the only liability was with Fontenot. Furthermore, the evidence of damages was lacking in that there was no evidence that the tree caused any of the damages Plaintiffs sought to have repaired. Additionally, aside from the urgent care records, Young had no receipts for her expenses. Thus, the trial court awarded Young $2,5000.00 in "general pain and suffering[.]" The court also awarded $1,800.00 for leaking pipes, which amount was supported by pictures and Pitre's testimony regarding his estimate from Reliable Plumbing.

Accordingly, on May 8, 2023, the trial court signed a judgment against Fontenot in the amount of $2,500.00 in favor of Young, with legal interest, and against Fontenot in the amount of $1,800.00 in favor of Pitre with legal interest and costs of the proceedings. All claims against Bourgeois were dismissed with prejudice.

Plaintiffs appealed, and Bourgeois filed a Motion to Dismiss Appeal, which was denied by this court on September 27, 2023. Plaintiffs do not specify assignments of error in their brief, but it is clear they seek review of the finding of no liability on Bourgeois. One conclusory sentence also implies Plaintiffs may be

---

[5] The trial transcript incorrectly refers to these articles as "La.R.S. 23:20" and "La.R.S. 23:17."

6

seeking an increase in the damage amounts awarded: "Bourgeois should be ordered to pay a substantial amount to Plaintiffs and all costs and expenses." However, Plaintiffs do not challenge the judgment against, or the amounts assessed against Fontenot.

**DISCUSSION:**

In this case, after Plaintiffs presented their evidence, Bourgeois moved for a dismissal, which the trial court granted as to Bourgeois. The trial court also awarded damages against Fontenot, based on the evidence presented by Plaintiffs during their case-in-chief.

> Louisiana Code of Civil Procedure Article 1672(B) states in pertinent part:
>
>> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
>
> Pursuant to Article 1672, the trial court must consider and weigh the plaintiff's evidence and dismiss the matter if it determines that she has not met her burden of proof. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271. The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review. *Id.* Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. *Id.*

*Gauthier v. City of New Iberia*, 06-341, pp. 2–3 (La.App. 3 Cir. 9/27/06), 940 So.2d 915, 918.

7

Regarding liability of Bourgeois, Plaintiffs argue on appeal that Bourgeois "should be liable for the damage caused by his negligence in letting an unqualified person, who probably never cut trees before, cut some of his trees just because he wanted some pecan wood." Plaintiffs continue, "Plaintiffs/appellants argue that the Court should have found [Bourgeois] guilty of acting as a bad owner and putting all the blame on Michael Fontenot" and "[w]e submit that the Court's dismissing Kim Bourgeois is not correct."

First, we note the only allegations asserting negligence in the petition are as follows:

> II.
> On or about November 15, 2019 KIM BOURGEOIS hired MICHAEL FONTENOT to cut some branches from a tree on the property adjacent to a lot owned by HATTIE YOUNG AND ALFRED PITRE . . . . This tree extended over the property line and hung over the mobile home situated thereon. While MICHAEL FONTENOT was cutting the branches, it [sic] fell on the mobile home, causing massive damage to it and injuring HATTIE YOUNG.

> III.
> The fact that an employee caused the accident gives rise to vicarious liability against KIM BOURGEOIS.

> IV.
> This accident was solely caused by the negligence of MICHAEL FONTENOT in performing arborist activity without a license.

Thus, we agree with the trial court that the facts in the petition would establish liability on Bourgeois only under La.Civ.Code art. 2320 if proven at trial. The only facts elicited at trial attempted to establish that Bourgeois should be liable for allowing Fontenot to cut his tree or because the tree existed on his property. Such liability is controlled by La.Civ.Code art. 2317 and those articles modifying article 2317.

Louisiana Civil Code Article 2317 (emphasis added) provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. *This, however, is to be understood with the following modifications*."

Thereafter, the following articles modify the liability of a person for the acts of others or for things in their custody. Applicable herein are articles 2317.1 (damage caused by ruin, vice, or defect in things) and 2320 (acts of servants, students, or apprentices).

Louisiana Civil Code Article 2317.1 provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

As noted by the trial court and as can be seen by our review of the record and facts stated above, no evidence was introduced regarding the ruin, vice, or defect of the tree that was cut. Therefore, Bourgeois cannot be held liable under this code article.

Louisiana Civil Code Article 2320 (emphasis in original) provides:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.

> In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses*.

The first circuit explained how to determine whether an employer-employee relationship exists in *Brumfield v. Gafford*, 99-1712, p. 7 (La.App. 1 Cir. 9/22/00), 768 So.2d 223, 227 (footnote omitted):

> In order for an employer to be held liable for the actions of an employee under Article 2320, the plaintiff must show (1) that a master-servant or employer-employee relationship existed between the employee tortfeasor and the employer, and (2) that the tortious act of the servant or employee was committed within the scope and during the course of his employment with the employer sought to be held liable. *Parmer v. Suse*, 94-2200, p. 4 (La.App. 1st Cir.6/23/95), 657 So.2d 666, 668, *writ denied*, 95-1853 (La.11/3/95), 662 So.2d 10.
>
> > In determining whether an employment relationship exists the jurisprudence of this state has uniformly held that the most important element to be considered is the right of control and supervision over an individual. Factors to be considered in assessing the right of control are the selection and engagement of the worker, the payment of wages and the power of control and dismissal.
>
> *Parmer*, 94-2200 at 4, 657 So.2d at 668 (citations omitted).

The evidence adduced at trial proved only that Fontenot approached Bourgeois and asked permission to cut the pecan tree for his own personal use as firewood. There is no evidence that Bourgeois sought to hire Fontenot, or anyone for that matter, to cut this tree, and there is no evidence that Bourgeois paid Fontenot for tree-cutting services.[6] At most, Bourgeois arguably could have revoked the permission given to Fontenot to be on the property to cut the tree. However, aside from Charles's testimony that Bourgeois saw limbs fall on Plaintiffs' trailer and did

---

[6] In brief, Plaintiffs discuss Bourgeois' deposition and what was said in the deposition. Specifically, Plaintiffs allege Bourgeois explained that he made a listing on Facebook asking for someone to cut his trees at his house. Plaintiffs also assert that Bourgois admitted that he saw Fontenot cutting the tree and saw when it started falling on the Pitre residence. That deposition was not offered or admitted into evidence and is not a part of our appellate record. It cannot be considered.

not stop Fontenot, there is no evidence that Bourgeois acted negligently in failing to revoke said permission. Furthermore, there is no evidence that Bourgeois could have stopped Fontenot prior to the limbs damaging Plaintiffs' trailer since Bourgeois was alleged to be at his place of business and not on the property itself.

We also note that La.Civ.Code art. 667 (emphasis added), which was not addressed by the trial court, provides:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, **he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.** Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

However, Plaintiffs did not present evidence that Bourgeois should have known that the tree trimming would cause Plaintiffs' damage. While Plaintiffs assert that Fontenot should have been licensed, neither party at the trial presented a law that requires a person trimming a tree for free to have a special license. The trial court even raised that question. Thus, Plaintiffs did not carry their burden of proving that Bourgeois should have known, in the exercise of reasonable care, that Fontenot's tree-trimming actions would damage Plaintiffs' trailer.

Considering the above, we find no manifest error in the trial court's finding of no liability on Bourgeois and no error in its subsequent dismissal of all claims

11

against Bourgeois.  Thus, any discussion regarding damages owed by Bourgeois is moot.

**DECREE:**

For the foregoing reasons, the trial court's May 8, 2023 judgment dismissing all claims against Kim Bourgeois with prejudice is affirmed.  Costs of this appeal are assessed against Plaintiffs, Hattie Young and Alfred Pitre.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

12