931 So.2d 1111 (2006)
Billie KARNO and Rosemary Caracci
v.
BOURBON BURLESQUE CLUB, INC. a/k/a Bourbon Burlesque, Inc.
No. 2005-CA-0241.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 2006.
*1112 Peter J. Butler, Peter J. Butler, Jr., Richard G. Passler, Jeffrey C. Vaughan, Breazeale, Sachse & Wilson, L.L.P., New Orleans, Counsel for Plaintiffs/Appellants.
Fred L. Herman, Thomas J. Barbera, Daniel W. Nodurft, Law Offices of Fred L. Herman, New Orleans, Counsel for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
The plaintiffs-appellants-lessors, Billie Karno[1] and Rosemary Caraci, appeal a *1113 judgment dismissing with prejudice their petition and rule to evict the defendant-appellee-lessee, Bourbon Burlesque Club, Inc., a/k/a Bourbon Burlesque, Inc. We affirm.
At the time they instituted this action on June 7, 2004, the plaintiffs each owned an undivided one-half interest in the property located at 327 Bourbon Street which they leased to the defendant pursuant to an original four year lease commencing on June 1, 1994, and an addendum thereto dated August 18, 1997[2].
The plaintiffs complain that the defendant breached that portion of the lease which obligated the defendant "to comply at the Lessee's expense with all ordinances and laws, now existing or to be enacted. . ."
Consequently, the plaintiffs argue that they are entitled to cancel the lease and evict the defendant pursuant to that section of the written lease entitled "Non-Payment of Rent Etc." which provides that "should the Lessee at any time violate any of the conditions of this lease . . . and should such violation continue for a period of TEN (10) days after written notice had been given Lessee," then the Lessor shall have several options, including the option "to immediately cancel the lease." Line # 171 of the lease further provides that:
All repairs, additions and improvements to the building is [sic] at lessee's expense and must be done in accordance with Vieux Carre Commission regulation and City Building Code.
The breach asserted by the plaintiffs arises out of an inspection report from Inspector Thomas St. Germain of the Fire Prevention Division of the New Orleans Fire Department ("NOFD"). Pursuant to this report, a Notice of Hearing set for May 12, 2004 was issued by the Administrative Adjudication Bureau for Public Health, Housing and Environmental Violations, Department of Health, City of New Orleans. The notice was received by the plaintiffs on May 14, 2004. The caption of the notice was: "Case No. 2004-2504 "F", The City of New Orleans v. 327 Bourbon Street, L.L.C., et al." The notice cited four violations of ordinances and/or sections of the Code of the City of New Orleans. Consequently, on May 17, 2004, the plaintiffs sent the defendant a letter (referred to by the plaintiffs as the "Default Letter") demanding that the defendant immediately comply with the Lease and cure the violations of law. Failure to comply would render the lease immediately cancelled. On the same day, a representative of the defendant signed a receipt accepting hand delivery of this Default Letter. The defendant does not dispute having received this letter.
The plaintiffs contend that pursuant to the above quoted portions of the lease, the defendant had ten days from notification in which to cure the defects in the property. The plaintiffs argue that the ten days expired either on March 12, 2004, ten days after the defendant received Inspector St. Germain's report, or, in the alternative, no later than May 27, 2004, ten days from the *1114 May 18, 2004 letter from counsel for the defendant acknowledging receipt of the "Default Letter." The plaintiffs further contend that the defendant has never fully rectified the four problems for which it was cited to appear by the Department of Health.
The August 18, 1997, addendum to the lease provided for rental increases averaging approximately 1% per annum on a compounded basis over the twenty-five year period covered by the addendum. The defendant characterizes these eviction proceedings as plaintiffs' attempt "to strong arm them into paying more rent." This characterization is supported by the trial court finding that the testimony of the defendant's president, Carol Glindmeyer, "establishes that plaintiffs would have not sought to evict defendants if they agreed to pay more rent."
The building at 327 Bourbon Street is classified as a blue-rated building according to the Vieux Carre rating system. Mr. Larry Hesdorffer, the director of the Vieux Carre Commission, testified that a blue-rated structure is considered to be of major historical significance. Accordingly, his agency subjects any actions regarding the building to very close scrutiny.
The trial court in written reasons for judgment made the following findings:
1. Upon receiving notice of Inspector St. Germain's report, counsel for the defendant wrote a letter to Inspector St. Germain expressing the intention to request a variance with the Board of Building Standards and Appeals.
2. However, the plaintiffs, who were the only ones who received notice, appeared at a hearing before the Administrative Adjudication Bureau on June 3, 2004, and pled no contest to the violations.
3. On or about June 5, 2004, plaintiffs filed their Petition and Rule to Evict.
4. Regulatory compliance within ten days is impossible because of the major historical significance of the property. For, example, a hearing must be scheduled before the Vieux Carre Commission and it could take a couple of years to remedy the fire code violations.
5. It was impossible for the defendants to remedy the violations within ten days and obtain the necessary permits.
6. The defendants have spent $1.2 million improving plaintiff's property.
7. Plaintiffs would not have sought to evict defendants if they agreed to pay more rent.
8. Relying on Karno v. Joseph Fein Caterer, Inc., 02-1269 (La.App. 4 Cir. 4/16/03), [846 So.2d 105] the trial court ruled in favor of the defendant.
The plaintiffs seize upon the trial court's finding that regulatory compliance within the ten-day period called for in the lease was impossible, to argue that the trial court erred in not dissolving the lease because the remedy for impossibility of performance is dissolution of the contract, not reformation of the contract. In their brief the plaintiffs argue that:
The Reasons for Judgment reflect that the sole focus of the trial court was on the defense of impossibility raised at trial by BBCI.
However, while the trial court's reasons for judgment refer to the fact that "it was impossible for the defendants to remedy the violations cited by Fire Inspector St. Germain within ten days," that is just one of a number of findings made by the trial court. Ultimately, the reasons for judgment conclude with a statement showing that the greatest factor considered by the trial court in reaching its decision was this Court's previous holding in Karno v. Joseph *1115 Fein Caterer, Inc., 02-1269 (La.App. 4 Cir. 4/16/03), 846 So.2d 105, a lease case involving the same plaintiffs:
[R]elying on Karno v. Joseph Fein Caterer, Inc. . . . plaintiffs' petition and rule to evict defendant is denied.
There is no mention of "impossibility" in Karno v. Fein. Instead of relying on a finding of impossibility, which was not an issue in Karno v. Fein, this Court in that case found that:
The trial court has discretion to decline dissolution of a lease where it finds that the breach of the lease is not major or where the breach was not the fault of the [lessee] or where the [lessee] was in good faith.
Id., 02-1269, pp. 8-9, 846 So.2d 105, 110. [Emphasis added.]
Therefore, implicit in the trial court's reliance on Karno v. Fein is a finding that the breach in the instant case was not major, that the breach was not the fault of the lessee, and that the lessee was in good faithall of which is supported by the record. Accordingly, we do not agree with the plaintiffs' contention that the trial court, in relying on Karno v. Fein, reformed the lease contract based solely on a finding of impossibility.
Instead of reforming the contract based on a finding of impossibility, the trial court's findings signify that it is well known that the permitting process for historic buildings in the highly regulated French Quarter can be complex because of the overlapping and conflicting authority of various agencies. This is an indication of the reasonableness of the defendant's actions as well as an indication that the parties to the lease could not possibly have contemplated that every code problem would be considered to be a sufficiently serious breach of the lease to warrant dissolution. In other words, we do not believe that the parties intended the clause in the lease requiring compliance with laws and ordinances to be read as referring to every unresolved citation or to citations that could not be remedied within the contractual grace period. The citation process contemplates appeals and requests for variances and we do not believe that under the facts of this case the defendant should be considered to be in violation of the lease as long as it is pursuing its administrative remedies in a reasonable and timely manner, which in this case it did. Instead of a clearly defined, hard, fast list of immutable rules, by allowing for variances, the regulations contemplate a process. We find that, in the context of the facts of this case, had the parties intended that the lease be dissolved based merely on the basis of the type of citations issued to the defendant, the parties would have included lease language that would have been more explicit on that issue.
As for what would be a substantial or material violation of a law or ordinance in this context, we believe the standard to be what a reasonable person would consider substantial when weighed against such factors as the magnitude of the lease, the extent of the lessee's performance to date, how the breach might impact the lessors, and whether the lessee was taking reasonable steps to deal with both the problem(s) and the regulatory process, consistent with the applicable codal provisions.
La. C.C. art. 2729 states that:
The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution.
The reference in La. C.C. art. 2729 to the rules concerning the dissolution of *1116 contracts in general, includes La. C.C. art. 2014, entitled "Importance of failure to perform" which is relevant to the instant case. La. C.C. art. 2014 states that:
A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee.
Thus, La. C.C. art. 2014 sets up two criteria for preventing dissolution in spite of a breach: (1) substantial performance by the obligor (in the instant case, BBCI) and (2) no substantial impairment of the interest of the obligee (in the instant case, Karno and Caracci).
While this code article was not specifically cited by this Court in its opinion in Karno v. Fein, its language is consistent with the finding of this Court in Karno v. Fein quoted above referring to non-major breaches. Moreover, La. C.C. art. 2014 is discussed in Quinn Properties, Inc. v. Sabine River Realty, Inc., 95-1714 (La.App. 3 Cir. 5/29/96), 676 So.2d 639, one of the cases cited by this Court in Karno v. Fein in support of the language from that case concerning non-major breaches quoted earlier in this opinion. The Quinn court found that the breach by the lessee in that case resulting in the lessor's partial loss of ownership of the property was a "substantial impairment" of the lessor's interest under La. C.C. art. 2014. We note that the plaintiffs have not alleged the existence of an impairment to their interests in the instant case that could be considered in the least measure comparable to that found to be substantial in Quinn.
Nor does the breach in the instant case affect the plaintiffs' interest to the extent that the failure of the lessee to obtain required insurance did in Select Properties, Ltd. v. Rando, 453 So.2d 980 (La.App. 4 Cir.1984). Insurance requirements are intended to protect the lessor's interests from exposure to substantial loss. Safety issues such as those the plaintiffs raise in connection with the defendant's alleged breaches of the lease are a special concern to the landlord if they can result in uninsured damage to the property or uninsured personal injury liability. One would expect serious safety issues to adversely impact the insurability of the property as regards such potential damage or liability, a legitimate concern for any landlord. The plaintiffs do not allege that the insurability of the property was in any way impaired by the defendant's alleged breaches of the lease. The absence of any such allegations provides another basis to support the trial court's implicit conclusion that there was no La. C.C. art. 2014 substantial impairment of the interest of the plaintiffs. The trial court could legitimately infer that had there been any problems with the insurability of the property, the plaintiffs would surely have made allegations to that effect, leading to the further conclusion that in the absence of any such allegations, the alleged breaches were not "substantial" in the La. C.C. art. 2014 sense of the word.
Additionally, in Karno v. Fein, this Court made the following finding of particular relevance to this case:
The trial court also held that, to the extent that the failure to obtain approval in written form of the alterations, failure to perform some maintenance items, and failure to give the lessors an opportunity to deal with the hail damage, constituted breaches of the lease, those breaches were not sufficiently serious to justify dissolution of the lease after the lessee spent over $932,000 renovating the premises. We agree.
Id., 02-1268, p. 8, 846 So.2d at 110.
In the instant case the trial court made the following similar finding: "[D]efendants *1117 have spent $1.2 million improving plaintiff's property." Just as this Court noted the substantial amount of money that the lessee had paid for improvements to the premises leased from Karno and Caracci, we find that the trial court was correct in the instant case in having weighed the defendant's substantial investment in the leased premises against what could be characterized as "breaches. . . not sufficiently serious to justify dissolution of the lease after the lessee spent [$1.2 million] renovating the premises." Id.
The plaintiffs challenge the $1.2 million finding of the trial court. Referring to a "Miscellaneous Materials" document, the plaintiffs contend that many of the items that the defendants claimed as improvements to the property were for movables or for things such as copy expense or parking tickets that might be related to the operation of the defendant's business, but could not be considered to be improvements to the leased premises. However, this document calls into question at most $128,000.00 of the $1.2 million of improvements the defendant claimed to have made. Thus, even if we were to disregard all $128,000.00 of the items listed in the "Miscellaneous Materials" exhibit, it would have no material effect on our view of the case because we are left with over $1 million in improvements made by the defendant.
This is consistent with the holding in IP Timberlands Operating Co., Ltd. v. Denmiss Corp., 93-1637 (La.App. 1 Cir. 5/23/95), 657 So.2d 282:
The provision that the judge shall grant no delay in the dissolution of a lease is, in practice, subordinated to the court's preliminary decision concerning whether a dissolution is appropriate in the first place. One of the fundamental concepts of landlord-tenant law in Louisiana is that the court has considerable discretion in deciding whether a breach of the lease is serious enough to justify dissolution. See Palmer, La.Leases, § 5-19.
Id., 93-1637, p. 45, 657 So.2d at 309.
Moreover, where, as in the instant case, the alleged lease violations could be characterized as "technical" the courts are inclined to regard them as non-serious.
No doubt there was a technical violation of the contract, as the premises had been structurally changed without C & C Investments' written consent. However, voiding of lease agreements are not favored by the law, particularly for technical infringements. See Stoltz v. McConnell, 202 So.2d 451 (La.App. 4th Cir.1967), Atkinson v. Richeson, 393 So.2d 801 (La.App. 2nd Cir.1981) and many other cases with similar holdings. Both Dr. and Mrs. Chuck Cucchiara of C & C Investments admitted that they have not been hurt by the alterations. The Supreme Court of Louisiana has stated that the right to dissolve a lease is subject to judicial control according to the circumstances of each case. Brewer v. Forest Gravel Co., 172 La. 828, 135 So. 372 (1931). Also, Baham v. Faust, 333 So.2d 261 (La.App. 1st Cir.1976) and Hebert v. Brasseaux, 399 So.2d 778 (La. App. 3rd Cir.1981).
From the Herbert opinion:
". . . our courts, on the basis of equity, are vested with discretion under some circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him."
Goldblum v. C & C Investments, 444 So.2d 642, 643 (La.App. 5 Cir.1983).
While the plaintiffs refer with a sense of urgency to "substantial violations of the Life Safety Code which places life and limb at risk," the trial court, relying on *1118 Karno v. Fein, implicity found otherwise. Apparently, Inspector St. Germain detected no immediate crisis as his report includes instructions for obtaining variances from the report requirements. The defendant filed a timely application for variance with the Board of Building Standards and Appeals. Pending the defendant's appeal to the Board of Building Standards and Appeals, we find that the defendant was not in violation of any laws or ordinances within the intendment of the lease language.
The plaintiffs claim that the defendant "had known about the violations since 1998" and made the conscious decision to do nothing to rectify these "violations of law relating to life safety." However, the record shows that the State Fire Marshall approved the defendant's plans for the premises in 1998. Carol Glindmeyer testified that the plans were provided to the plaintiffs prior to construction and that he spoke to plaintiffs throughout the renovation project. When the project was completed the plaintiffs toured the building. Since that time, the defendant has been permitted to operate a nightclub on the premises. The property passed inspection with no deficiencies noted as late as June 17, 2003. Pursuant to the Fire Inspector's report, an Occupancy Certificate was issued on June 17, 2003. It was only as a result of the inspection of the premises by Inspector St. Germain arising out of the creation by the City of the Division of Fire Prevention and the Adoption of the Life Safety Code and the 2000 International Building Code (M.C.S. 21, 145) that the defendant had code enforcement issues.
The defendant's problems are exacerbated by the fact that it is subject to the overlapping jurisdiction of several regulatory agencies: the Vieux Carre Commission, the State Fire Marshall, the City Department of Safety and Permits, the City Department of Health and the Fire Prevention Bureau of the New Orleans Fire Department. These agencies, while they may have concurrent jurisdiction in many instances, are charged with different responsibilities, and, accordingly, can have a good faith difficulty agreeing on how to deal with issues such as those faced by the defendant. Consequently, someone in the defendant's position can find himself in a seeming quagmire of overlapping and conflicting regulatory requirements necessitating sometimes protracted negotiations with the various agencies.
Mr. Larry Hesdorfer, the director of the Vieux Carre Commission, testified that an appeal from his Commission would be to the City Council as would an appeal from the Board of Building Standards and Appeals, whereas an appeal from Safety and Permits would first be to the Board of Building Standards and Appeals and then to the City Council. Counsel for the plaintiffs agreed to this testimony by stipulation. Mr. Hesdorfer next testified that it would be reasonable for an applicant to do as the defendant did in the instant case (on July 15, 2004) and dismissing an appeal to the Board of Building Standards and Appeals and going to the Vieux Carre Commission in an attempt to resolve the problems more expeditiously.
While Inspector St. Germain's report noted six items, only the following four were presented by the City to the Administrative Adjudication Bureau ("AAB"):
1. No second means of egress (relating to the third and fourth floors).
2. Stairways not properly enclosed (between the first and second floors) 4912. M.C.S. § 301.
3. Failure to return floor plan submittal.
4. No approved exit sign (exterior).
*1119 The other two items noted in the inspection report, relating to the alley gates swinging in rather than out and trash in the alleyway causing obstruction of an exit, were apparently considered so insignificant that the AAB did not pursue them.
In response to the first problem cited, no second means of egress, the plaintiff roped off the third and fourth floors in April of 2004 and in July they were barricaded. The defendant obtained an approved fire watch on July 14, 2004.
The second problem cited, the lack of a proper stairway enclosure is complicated by the fact that the stairway is of monumental proportions and constitutes a major historical architectural element of the building built in the 1830-1840's. The State Fire Marshall accepted and approved defendant's plans in 1999. At first, the defendant attempted to have a sprinkler system installed in the building, but the City water pipes running to the building were not adequate to deliver a sufficient volume of water to operate a sprinkler system. Moreover, if an enclosure could be constructed, it would require the approval of the Vieux Carre Commission as it would have to exit the building somewhere. With the fire watch in place, the defendant continues to work with the Fire Marshall to determine if some additional fire detection and prevention method could be employed as an acceptable alternative to enclosing the staircase.
In response to the third item cited by the AAB, the failure to return floor plan submittal, the defendant contends that this item is in error and that it had previously submitted the floor plans to the Fire Department Division and that copies of the floor plans exist in the records of the New Orleans Fire Department. In any event, the defendants further contend that out of an excess of caution an additional set of plans was delivered to Inspector St. Germain at the AAB meeting. The plaintiffs do not contest this.
Regarding the need for an exit sign, the fourth and last item on the AAB agenda, the defendant's manager, Mr. Rudy Polise, testified that the defendant was unsure what exactly was being requested. Therefore, in response to this item the defendant put in additional emergency lighting, signs and flood lights in the courtyard as well as emergency lighting and additional signs in the alley. In any event, Inspector St. Germain eventually informed the defendant that all he was seeking was an additional exit sign on the interior of the alley gates. This appears to be an issue no longer.
Regarding the direction of the swing of the alley gates, one of the two items raised in the St. Germain inspection report not raised by the AAB, we note that approval of the Vieux Carre Commission is required in order to reverse the swing of the alley gates so that they swing outwardly instead of inwardly. The defendant applied to the Vieux Carre Commission on July 3, 2004, but the application was denied. Mr. Hesdorffer testified that a change in the door swing "is clearly contra to what the purposes of the VCC's preservation responsibilities are." Approval of the Fire Marshall is also required. Under the circumstances, we find that the defendant is doing all that can reasonably be expected of it at this time.
The other item listed in the St. Germain Report, but not cited by the AAB, the trash in the alley, was apparently addressed by the defendant.
After reviewing each of the alleged breaches of the lease, we make the following findings:
1. The alleged breaches are not the fault of the defendant.

*1120 2. The alleged breaches are not breaches as long as the defendant continues to pursue the regulatory process in good faith.
We make the following additional findings:
1. There is no manifest error in the trial court's implicit finding that the defendant has rendered substantial performance under La. C.C. art. 2014.
2. We find no substantial impairment of plaintiffs' interests under La. C.C. art. 2014.
3. We agree with the trial court's finding that Karno v. Fein is applicable to the instant case.
4. Therefore, we find that the trial court's reference to "impossibility" must be read in the context of the foregoing, i.e., the trial court made the reasonable finding that it would be inequitable to dissolve the lease where the defendant had already rendered substantial performance and where the defendant's failure to immediately do the impossible resulted in no substantial impairment of the plaintiffs' interests.[3]
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiffs-appellants' cost.
AFFIRMED.
NOTES
[1] It appears that in the interval between the time suit was filed and the time this matter came to trial the Karno interest may have been transferred to an alter ego interest, but such transfers of ownership among related parties are not at issue and have no bearing on this appeal.
[2] This addendum provided for five five-year renewal options running through the year 2023. The rent increased by $1,000.00/month every five years, beginning with $12,500.00/ month during the first five year option period and eventually increasing to $16,500.00/ month for the last five year option period. The addendum expanded the leased premises to include "the rear of the 327 Bourbon property" for the consideration of an additional $4,000.00/month rental. Additionally, the addendum required the lessee to make $200,000.00 in repairs during the first five-year option period of 1998-2003 and required "that all structural repairs, additions and improvements to the building ... must receive written consent/approval from Lessors."
[3] We have not found it necessary to the disposition of this case to resolve the defendant's complaints that the plaintiffs have acted in bad faith through their architect and have otherwise been obstructionist and have harassed the defendant in furtherance of their attempts to dissolve the lease and/or increase the rents.