# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 06-1498

**DONNIE KOONCE, D/B/A K KRANE**

**VERSUS**

**KEMP DOUSAY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-1563
HONORABLE TED R. BROYLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Nathan A. Cormie
Post Office Box 1626
Lake Charles, LA   70602
(337) 439-2422
COUNSEL FOR DEFENDANT/APPELLEE:
      Kemp Dousay**

**Yul D. Lorio
Shaun S. Gill
Blaine A. Doucet
Doucet Lorio, L.L.C.
One Lakeshore Drive, Suite 1695
Lake Charles, LA   70629
(337) 433-0100
COUNSEL FOR PLAINTIFF/APPELLANT:
      Donnie Koonce, d/b/a K Krane**

AMY, Judge.

The plaintiff appeals the trial court's granting of the defendant's motion for involuntary dismissal. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that the plaintiff, Donnie Koonce (Koonce) d/b/a K Krane, and the defendant, Kemp Dousay (Dousay), entered into an agreement whereby Dousay would lease a 1994 Ford LNT8000 Truck and a 990 National Crane at $1,500.00 per month for sixty months from Koonce. According to Koonce, the terms of the lease agreement required that Dousay provide adequate insurance on both the truck and the crane, list Koonce as an "added insured[,]" and that the equipment be domiciled at the address given in the lease agreement.

On October 28, 2005, Koonce's attorney sent Dousay a letter terminating the lease agreement due to Dousay's alleged default in not providing adequate insurance coverage for the full insurable value of the equipment and in not keeping the equipment domiciled at the named address.[1] According to this letter, which was entered into evidence, Koonce, citing the Louisiana Lease of Movables Act, demanded the return of the truck and equipment within five days of receipt of the letter or legal proceedings would be instituted.

Dousay's attorney sent correspondence to Koonce's attorney, denying all of Koonce's allegations and informing Koonce that he would "not be surrendering the machinery as demanded." On April 4, 2006, Koonce filed pleadings[2] requesting that

---

[1] We note that the demand letter sent to Dousay contains several reasons for termination of the lease agreement. However, we will only address those bases which were discussed at trial and are the subject of this appeal.

[2] The record indicates that Koonce filed a pleading entitled: "Rule to Show Cause Why Lease Should Not Be Terminated and Lessee Should Not Surrender Property to Lessor." Louisiana Revised Statutes 9:3322 provides in pertinent part:

the lease be terminated and the property returned to him. In his pleadings, Koonce alleged that "Dousay is in default of the Lease Agreement for numerous reasons including: (i) failure to maintain an adequate amount of insurance to cover the Vehicle and (ii) failure to act as a prudent administrator." A hearing was held on June 27, 2006. At the close of Koonce's case, Dousay moved for involuntary dismissal, asserting that Koonce did not prove that he "failed to carry out his responsibilities under the lease/purchase agreement." The trial court granted the motion. Koonce now appeals, raising the following issues:

1.  Was the trial court correct in finding Dousay in substantial compliance and ignoring the Lease of Movables Act for failing to maintain adequate insurance up to the amount of the lease-purchase agreement and should the lease-purchase agreement be construed against the drafter?

2.  Was the trial court correct in finding K Krane had not met the burden of proof in establishing a prima facie case for termination of the lease-purchase agreement under the Lease of Movables Act?

**Discussion**

*Adequate Insurance*

Koonce argues that Dousay "was in default for not maintaining adequate insurance coverage to [his] satisfaction as required in the lease-purchase agreement." He asserts that the "total value of payments" under the lease was $90,000.00; however, Dousay only insured the truck for $50,000.00. According to Koonce, the

_____

A. If the lessee fails or refuses to surrender the leased property to the lessor within the delays provided in R.S. 9:3321, the lessor may cause the lessee to be cited summarily by a court of competent jurisdiction to show cause why he should not be ordered to surrender possession of the leased property to the lessor, in accordance with the provisions of this Section."

crane was not insured and this coupled with the amount of insurance coverage, violated La.R.S. 9:3333.[3]

Louisiana Code of Civil Procedure Article 1672(B) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

"The trial court is granted much discretion in determining whether to grant an involuntary dismissal." *Boone v. Reese*, 04-979, p. 5 (La.App. 3 Cir. 12/8/04), 889 So.2d 435, 438 (citing *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271). If after considering and weighing the plaintiff's evidence, the trial court determines that the plaintiff has not met his burden of proof, it must dismiss the plaintiff's case. *Gauthier v. City of New Iberia*, 06-341 (La.App. 3 Cir. 9/27/06), 940 So.2d 915. "The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review." *Id*. at 918.

In granting the motion for involuntary dismissal, the trial court stated:

> Now, there's not much alleged in this -- petition here, as I said, two things: One, failure to maintain an adequate amount of insurance to cover the -- the vehicle . . . and, two, failure to act as a prudent

---

[3] Louisiana Revised Statutes 9:3333 states:

> A lessor may request or require a lessee to insure the leased property against loss, damage, destruction, and other contingencies, as well as require the lessee to obtain comprehensive liability insurance with regard to use of the leased property and the lessor's related business activities. The cost of such insurance may also be included at the lessee's option as a separate charge in a lease contract or agreement. Any insurance and the premiums or charges thereon shall bear a reasonable relationship to the amount, term, and condition of the lease contract or agreement, the existing hazards or risks of loss, damage, or destruction, and shall not provide for unusual or exceptional risks or coverages which are not ordinarily included in policies issued to the general public.

administrator. Well, I never knew that a lessee like this could be regarded as a prudent administrator. I can see why you say in there that he has to maintain the -- the machinery in good repair or something like that, but so forget about this number two, then it's almost meaningless.

I was concerned about the failure to maintain an adequate amount of insurance to cover the vehicle.

Now, it would have been simple enough to have changed the contract to say, "It is the responsibility of the lessee to maintain property insurance in the sum of not less than $100,000, let's say, less whatever -- less whatever is paid or will have been paid by the lease installments," and it would have been simply enough to say that -- well, there was provided [sic] adequate liability insurance.

I don't believe there's any issue about that. I think the real issue is whether the crane was covered and so -- what I'm ruling is that there was substantial compliance on the part of the lessee in this, and it's manifested, too, by the -- by being paid up to date under the lease.

There will be judgment for the -- for the defendant.

The sections of the lease agreement that are relevant to our discussion are:

4.    LESSEE assumes all risk and liability for and agrees to indemnify, save and hold LESSOR harmless from all claims and liens of all loss and damage to the machinery and all loss, damage, claims, penalties, liability and expenses, including reasonable legal fees, howsoever arising or incurred because of the machinery or the storage, use of operation thereof. LESSEE at its own expense shall carry adequate liability insurance with respect to use, operation and possession of the machinery against bodily injury and against property damage.

5.    LESSEE, at its own expense, will provide during the term of this lease, before any equipment covered by this lease is used, such insurance of the type and in an amount satisfactory to LESSOR as is necessary for and against any liability or loss for injury or death to any person or persons or for any damage to property resulting from or arising out of the use, possession or operation by LESSEE of any equipment hereby leased. LESSEE shall keep the equipment insured at its full insurable value against loss or damage to it resulting from all risk or physical damage. LESSEE shall deliver to LESSOR policies or certificates of insurance naming LESSOR as an insured.

4

After reviewing the record, while we consider La.R.S. 9:3333, we find it dispositive that the lease agreement itself speaks on the issue of adequate insurance coverage. The trial court found that there was substantial compliance with the lease agreement, and this factual finding will not be reversed absent manifest error. *Young v. Turnipseed*, 33,602 (La.App. 2 Cir. 6/21/00), 764 So.2d 1172.

At the hearing, Koonce testified that the insurance that Dousay obtained was inadequate because "[i]t is a general automotive policy. It is not covering general liability. It covers the liability as the truck is running down the road, not as it is being used as a crane." Over defense counsel's objection, Koonce's attorney asked him what type of insurance he thought was necessary to limit his liability with regard to the truck and the crane. Koonce explained:

> To operate a crane, you have to have the insurance first to move the vehicle, which is automotive. If you use it as a bucket truck, under the State of Louisiana statutes, you can run a bucket truck as lifting personnel as a bucket truck. It does not have a winch on it okay.
>
> Then to use it as a crane, you have to have a [sic] optimum general liability. That's when you set your outriggers out and you're lifting equipment.
>
> Then you have to have -- you should have on-hook is whatever you have you're lifting that could be damaged, come off the hook, kill somebody, hit something, whatever. Those are three basic types of insurance.

Koonce entered into evidence the various insurance policies that Dousay submitted to him. We note that Dousay had an automotive liability policy with Republic-Vanguard Insurance Company, which shows that Dousay added the truck that he leased from Koonce as a covered auto under the policy and that liability coverage was proved in the amount of "[$]1,000,000[.00] CSL" (combined single

limit). This endorsement became effective May 18, 2005. Another policy shows that Dousay had property damage insurance in the amount of $50,000.00.

The lease agreement states that: "LESSEE at its own expense shall carry adequate liability insurance with respect to *use, operation and possession of the machinery* against bodily injury and against property damage." (Emphasis added). While we note that the lease agreement describes "the machinery" as a: "94 FORD LNT8000" and a "990 NATIONAL CRANE[,]" it does not specifically state that both the truck and the crane are required to be separately insured.

Dousay provided both liability ($1,000,000.00 CSL) and property damage ($50,000.00) insurance on the truck. At the hearing, Koonce was asked how much the truck was worth, to which he replied, "[a]t this day and time, if I had to say, probably anywhere from five to ten thousand dollars." He estimated that the crane was worth between $50,000.00 and $60,000.00. Koonce entered into evidence an affidavit from an appraiser who found that the equipment had a market value of $70,000.00. Koonce's attorney acknowledged that on the morning of the hearing, Dousay's attorney provided him with a policy which indicated that Dousay increased the property damage insurance from $50,000.00 to $70,000.00.[4]

Lastly, in his brief to this court, Koonce argues that there was not substantial compliance with the lease agreement because he was not named as an additional insured in Dousay's policy, but rather as the loss payee. However, in *Karno v. Bourbon Burlesque, Inc.*, 05-241, p. 9 (La.App. 4 Cir. 5/10/06), 931 So.2d 1111, 1117, the court stated, "where . . . the alleged lease violations could be characterized

_____

[4] At the hearing, Koonce argued that this was the first time that Dousay's insurance policy listed the crane on it. This iteration of the policy was not entered into evidence. However, there is no indication that this increase in the policy was determinative to the trial court's conclusion that Dousay substantially complied with the lease agreement.

6

as 'technical' the courts are inclined to regard them as non-serious." The court found a technical violation when the lessee structurally changed the leased premises without the lessor's written consent. Nevertheless, it held that "voiding of lease agreements are not favored by the law, particularly for technical infringements." *Id.*

Moreover, La.Civ.Code art. 2014 states: "A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee." Pursuant to Article 2014, the trial court could have found that there was substantial compliance with the lease agreement where any part not performed did not substantially affect Koonce's interest.

In light of the trial court's factual determination that the insurance coverage provided by Dousay was adequate, we find no manifest error in the trial court's ruling that there was substantial compliance with the lease agreement. Therefore, we find that Dousay's motion for involuntary dismissal was properly granted.

This assignment is without merit.

*Termination of the Lease Agreement*

Koonce argues that because of Dousay's default, he is authorized, under La.R.S. 9:3318,[5] to terminate the lease agreement and recover possession of the truck

---

[5] Louisiana Revised Statutes 9:3318 (footnote omitted) provides:

A. (1) In the event of default by the lessee under a true lease, or under a financed lease entered into prior to the time Chapter 9 of the Louisiana Commercial Laws becomes effective, the lessor may do any one of the following:

(a) He may file an appropriate collection action against the lessee to recover accelerated rental payments and additional amounts that are then due and outstanding and that will become due in the future over the full base term of the lease, as provided under R.S. 9:3319.

(b) He may cancel the lease, recover possession of the leased property and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement, as provided under R.S. 9:3320 through 3328.

7

and crane. Koonce contends that the trial court erred in not finding that pursuant to La.R.S. 9:3322, his affidavit established a prima facie case for termination of the lease agreement.

Our conclusion that the trial court was not clearly wrong in finding that Dousay substantially complied with the lease agreement pretermits any discussion on this assignment of error.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court granting the defendant's motion for involuntary dismissal. All costs of these proceedings are assessed against the plaintiff, Donnie Koonce d/b/a K Krane.

**AFFIRMED.**

---

(2) The above remedies following the lessee's default are not cumulative in nature. The lessor may not seek to collect accelerated rental payments under the lease and also to cancel the lease and recover possession of the leased equipment.

B. In the event of default by the lessee under a financed lease entered into after Chapter 9 of the Louisiana Commercial Laws becomes effective, the lessor may at his option:

(1) Exercise such rights and remedies following default as are provided under this Chapter; or

(2) Exercise such rights and remedies following default as are provided under Chapter 9 of the Louisiana Commercial Laws.