STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-782


THOMAS D. CURTIS

VERSUS

BLUE CROSS BLUE SHIELD OF LOUISIANA, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20031416
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Christopher A. Edwards**
**Edwards Law Firm**
**Post Office Box 2970**
**Lafayette, LA   70502-2970**
**(337) 237-6881**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Thomas D. Curtis**

**Thomas R. Hightower, Jr.**
**Patrick Wade Kee**
**John Andrew Durrett**
**Post Office Drawer 51288**
**Lafayette, LA   70505**
**(337) 233-0555**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Louisiana Health Services and Indemnity Company, d/b/a**
     **Blue Cross/Blue Shield of Louisiana**

AMY, Judge.

The plaintiff filed suit against the defendant insurance company arguing that it increased his premiums in violation of La.R.S. 22:228 and La.R.S. 22:229.1. Additionally, he alleged that the defendant committed fraud by not disclosing that it was utilizing a durational factor when determining the amount of his premiums. After a partial summary judgment was granted in the plaintiff's favor, the matter proceeded to trial. At the close of the plaintiff's case, the defendant moved for an involuntary dismissal, arguing that the plaintiff did not meet his burden of proof. The trial court granted the motion and dismissed the plaintiff's case. It is from this ruling that the plaintiff now appeals. For the following reasons, we affirm.

## Factual and Procedural Background

In February 1999, the plaintiff, Thomas D. Curtis, and his wife obtained an individual health insurance policy with the defendant, Louisiana Health Service and Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana (Blue Cross). The policy had an initial deductible of $500.00 and a monthly premium of $391.48. In January 2000, the monthly premium was increased to $432.21, and the deductible was increased to $750.00. Mr. Curtis was diagnosed with multiple sclerosis in September 2000. According to Mr. Curtis, his policy premiums continued to periodically increase, ultimately reaching $1,241.50 by March 2006. He filed suit against Blue Cross, alleging that by continuing to increase his premiums, in violation of La.R.S. 22:228 and La.R.S. 22:229.1, it unilaterally cancelled his policy. By amended petition, Mr. Curtis contended that Blue Cross committed fraud by failing to disclose that it was utilizing a "durational factor" to increase his premiums over the length of the policy.

On September 3, 2004, Mr. Curtis filed a motion for summary judgment, arguing that: (1) Blue Cross could not increase his premiums after September 18, 2000, the day that he was diagnosed with multiple sclerosis; (2) Blue Cross violated the law by charging him a "durational rating" that was never disclosed to him until January 2003; and (3) as a result of its fraud in using a durational rating, Blue Cross owed him attorney fees. Following a hearing, the trial court signed a judgment on March 17, 2005, in which it found that:

> (1) By increasing premiums on the policy issued to Thomas D. Curtis, BlueCross has violated [La.R.S.] 22:228. Summary judgment on this issue is granted and the defendant is prohibited from changing their premiums on said policy above $432.21 per month with a deductible of $750.00 without prior court approval;

> (2) By increasing premiums on the policy issued to Thomas D. Curtis, BlueCross has violated [La.R.S.] 22:229.1. Summary judgment on this issue is also granted in favor of plaintiff and defendant is prohibited from changing the premiums in said policy above $432.21 per month with a deductible of $750.00 without prior court approval;

> (3) The Motion for Summary Judgment based upon fraud is denied;

> (4) Defendant is cast for all cost[s] of this motion; and

> (5) This is not a final Judgment as additional issues remain for determination by the Court.

Pursuant to a stipulation signed by the parties on March 24, 2005, they agreed that the March 17, 2005 judgment was not a final judgment and that it was "subject to revision at any time prior to submission as a final judgment[.]" On November 15, 2005, Mr. Curtis filed another motion for summary judgment concerning the following issues: (1) "date of receipt or notice of a covered claim as referred to in [La.R.S] 22:228 and 22:229.1"; (2) "specific amount of back-time overpaid premiums reimbursement owed by BlueCross to THOMAS CURTIS"; (3) "specific amount of

2

prescription co-payment reimbursement owed by BlueCross to THOMAS CURTIS";

and (4) "attorney fees." In response, Blue Cross filed its own motion for summary

judgment, alleging that Mr. Curtis could not prove that there is no genuine issue of

material fact and that he is entitled to judgment as a matter of law. Following a

hearing, the trial court denied both motions for summary judgment.

Trial of the matter was held on August 15, 2006. At the close of Mr. Curtis'

case, Blue Cross moved for an involuntary dismissal, arguing that Mr. Curtis did not

prove his fraud allegation or that the increase in premiums violated either La.R.S.

22:228.6 or La.R.S. 22:229.1. The trial court granted the motion. Mr. Curtis

subsequently filed a motion for new trial, which the trial court denied. Mr. Curtis

now appeals, raising the following issues:

(1) Was the trial judge manifestly erroneous in dismissing plaintiff's case at the end of plaintiff's presentation of evidence?

(2) Did plaintiff's case meet the requirements of La.R.S. 22:228?

(3) Did plaintiff's case meet the requirements of La.R.S. 22:229.1?

(4) Did BlueCross BlueShield commit fraud upon Thomas Curtis by applying a "durational factor" to increase his premiums and not telling him about it during the years 2000, 2001, and 2002?

**Discussion**

*Involuntary Dismissal*

Mr. Curtis contends that the trial court erred in dismissing his case at the end

of his presentation of evidence.

Louisiana Code of Civil Procedure Article 1672(B) provides:

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may

3

then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

In *Koonce v. Dousay*, 06-1498, p. 3 (La.App. 3 Cir. 3/7/07), 952 So.2d 893, 895 (citations omitted), this court stated:

> The trial court is granted much discretion in determining whether to grant an involuntary dismissal. If after considering and weighing the plaintiff's evidence, the trial court determines that the plaintiff has not met his burden of proof, it must dismiss the plaintiff's case. The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review.

When moving for an involuntary dismissal, Blue Cross addressed Mr. Curtis's fraud allegation:

> The Court had previously entered a preliminary ruling saying that no fraud had occurred and there were no attorneys fees, et cetera, available. We would re-urge that at this time. There was no evidence presented that there was any intent to mislead or misrepresent on the part of Blue Cross, and on top of that, there's no statutory or regulatory requirement, as has been addressed previously in the litigation that Blue Cross disclose a durational factor.

Additionally, Blue Cross contended that Mr. Curtis did not prove a violation of La.R.S. 22:228.6 or La.R.S. 22:229.1:

> There was no evidence presented that it was not applied to the insureds who had the same health plan or policy. There was nothing that was presented to show that Mr. Curtis was singled out or handled differently than others with his type of policy. There was no evidence whatsoever supplied by the plaintiff that would even remotely suggest a violation of 22:229.1 of Louisiana Revised Statutes[.] The pertinent aspect, and in support of our motion, we cite, particularly, the last sentence that specifically says in pertinent part: This section shall not prohibit any group health and accident insurer or any individual accident health insurer from increasing its premium if the increase is applicable to all insureds who have the same individual accident and health plan or policy.
>
> In this particular instance, the statute allows for premium increase. There were premium increases assessed to Mr. Curtis, but there's no evidence whatsoever that they were assessed in any way, shape, or form other than as to those with this plan or policy. And without that,

4

plaintiff does not carry the burden to show a violation of 229.1 or 228.6, and in turn, Regulation 51.

After hearing the arguments of counsel for Mr. Curtis, the trial court explained:

Looking at the evidence in the light most favorable to the non-moving party, even doing that, I don't see where the plaintiff has shown any evidence that there has been a violation of law by the increase in premiums the defendant raised against the plaintiff, and I will grant the motion in favor of the defense.

In his brief, Mr. Curtis states that when granting the motion for involuntary dismissal, the trial court apparently found that the increase in his premiums did not violate the relevant statutes. He argues that this was contrary to the trial court's previous ruling on his motion for summary judgment, in which the trial court held that "the premium increases applied to Mr. Curtis violated 22:229.1" and that "BlueCross' actions did in effect unilaterally cancel plaintiff's policy in violation of 22:228." According to Mr. Curtis, the law of the case doctrine prohibits the trial court from reconsidering and reversing its prior rulings of law in the same case. Mr. Curtis notes that although this doctrine is discretionary, it should be applied in this case because the trial "judge was manifestly erroneous in changing his mind on these issues."

"Typically, the law of the case doctrine applies to previous decisions of an appellate court on a particular issue, not to decisions of the trial court." *Firstar Communications of La., L.L.P. v. Tele-Publishing, Inc.*, 00-2219, 00-2220, p. 5 (La.App. 4 Cir. 8/29/01), 798 So.2d 1032, 1035-36. However, the doctrine does relate to "the binding force of trial court rulings during later stages of the trial[.]" *Petition of the Sewerage & Water Bd. of New Orleans*, 278 So.2d 81, 83 (La.1973). In *Leger v. Weinstein*, 03-1497, p. 6 (La.App. 3 Cir. 10/27/04), 885 So.2d 701, 705, *writ denied*, 04-2899 (La. 2/4/05), 893 So.2d 882, *writ denied*, 04-2903 (La. 2/4/05),

5

893 So.2d 873, this court held that the "law of the case doctrine essentially provides that final judgments rendered during the course of litigation become the law of the parties to that litigation."

Louisiana Code of Civil Procedure Article 1915 provides in pertinent part:

> B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues or theories . . . the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
>
> (2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Here, the partial summary judgment did not obtain the force of a final judgment as the trial court did not designate it as such. Rather, the trial court indicated that the March 17, 2005 judgment was "not a final Judgment as additional issues remain for determination by the Court." Furthermore, the parties stipulated that this judgment was not a final judgment and that pursuant to Article 1915(B)(2), it could be revised at any time prior to submission as a final judgment. Because there was no final judgment, the law of the case doctrine is inapplicable. Accordingly, this assignment has no merit.

*Louisiana Revised Statutes 22:228 and 22:229.1*

Mr. Curtis asserts that the trial court erred in finding that he did not prove that Blue Cross violated La.R.S. 22:228 and La.R.S. 22:229.1.

Louisiana Revised Statutes 22:228 provides in pertinent part:

6

A. No group, individual, family group, or blanket health insurer shall unilaterally cancel a policy after the insurer has received any covered claim or notice of any covered claim for a terminal, incapacitating, or debilitating condition if the insured continues to meet all other eligibility criteria as provided under Part VI-C of this Chapter.

B. In this Section "terminal, incapacitating, or debilitating condition" means . . . any other disease, illness, or condition which a physician diagnoses as terminal, or any mental or physical handicap which renders a person incapable of self-employment, provided that the handicapped person is chiefly dependent upon the policyholder, employee, or member for support and maintenance.

C. This Section shall not be construed to prohibit the insurer from increasing the rate for the group, as provided in R.S. 22:228.1 through 228.6.

Louisiana Revised Statutes 22:229.1 provides:

No health and accident insurer may unilaterally cancel a policy of insurance except for nonpayment of premiums, increase the premium for such policy, or reduce the benefits provided by such insurance policy after receipt or notice of any covered claim. The insurer may cancel the policy, as otherwise provided by law, after the claimant has been discharged from treatment for that condition and no further claims for that condition are expected, provided there has been no other receipt or notice of claim under that policy. This Section shall not prohibit any group health and accident insurer or any individual accident and health insurer from increasing its premium if the increase is applicable to all members of the group insurance plan, or all insureds who have the same individual accident and health plan or policy.

It is undisputed that Mr. Curtis had an individual health insurance policy with Blue Cross. The source of contention is whether Blue Cross could increase Mr. Curtis's premiums once it had knowledge of his disabling condition, i.e., multiple sclerosis. Mr. Curtis argues that "once a policyholder has been diagnosed with a disabling disease then, as long as that claim is active, [the insurer] cannot increase the policy premiums over and above what any other policy holder would have to pay." According to Mr. Curtis, the increased premiums and deductible "amount[ed] to a prohibited cancellation of his policy, just as if the policy itself would have been

7

cancelled by Blue Cross. It is obvious that Blue Cross is, in effect, canceling the policy by making it unaffordable."

Conversely, Blue Cross argues that the increase in premiums was valid under the terms of its policy and La.R.S. 22:229.1. It further argues that the law does not prohibit an increase in premiums after a diagnosis of a disabling condition as long as the increase is applicable to "all insureds who have the same individual accident and health plan or policy." Blue Cross, however, explained that with regard to Mr. Curtis's policy, a durational factor was applied to increase his premiums over the length of the policy. It argues that the utilization of a durational factor is entirely within the purview of La.R.S. 22:228.6.[1] Moreover, it notes that Mr. Curtis's policy

---

[1] Louisiana Revised Statutes 22:288.6 provides in pertinent part:

B. (1) The Department of Insurance shall promulgate regulations no later than January 1, 1994, that provide criteria for the community rating of premiums for any hospital, health, or medical expense insurance policy, hospital or medical service contract, health and accident policy or plan, or any other insurance contract of this type, that is small group or individually written.

(2)(a) The regulations shall place limitations upon the following classification factors used by any insurer or group in the rating of individuals and their dependents for premiums:

(i) Medical underwriting and screening.

(ii) Experience and health history rating.

(iii) Tier rating.

(iv) Durational rating.

(b) The premiums charged shall not deviate according to the classification factors in Subparagraph (a) of this Paragraph by more than plus or minus thirty-three percent for individual health insurance policies or subscriber agreements. In no event shall the increase in premiums for a small employer group policy vary from the index rate by plus or minus thirty-three percent.

(3) The following classification factors may be used by any small group or individual insurance carrier in the rating of individuals and their dependents for premiums:

(a) Age.

8

is still in effect insofar as he continues to pay his monthly premiums.

At the outset, we note that Mr. Curtis's policy, which was entered into evidence, specifically states that Blue Cross has the right to alter the fees associated with the policy.[2] The relevant provision states:

E. Cancellation of Contract or Change of Fees:

. . . .

3.  We reserve the right to change the benefits of the Contract by giving thirty (30) days written notice to the Member at his last address shown in the Company's records. We also reserve the right to change the fees for the Contract after the first twelve (12) months of the Member's coverage and every six (6) months thereafter, and will give forty-five (45) days written notice to the Member at his last address shown in the Company's records before any increase of twenty percent (20%) or more in the policy rates.

The record indicates that Mr. Curtis received a letter dated January 6, 2000 in which Blue Cross informed him that his monthly premiums would be increased,

---

(b) Gender.

(c) Industry.

(d) Geographic area.

(e) Family composition.

(f) Group size.

(g) Tobacco usage.

(h) Plan of benefits.

(i) Other factors approved by the Department of Insurance.

[2] With regard to the modification of fees associated with a health insurance policy, La.R. S. 22:250.13 provides:

D. At the time of coverage renewal, a health insurance issuer may modify the health insurance coverage for a policy form offered to individuals in the individual market so long as such modification is consistent with state law and effective on a uniform basis among all individuals with that policy form.

effective March 1, 2000. He was given the option of increasing his deductible, which meant that his premiums would not be greatly increased. Mr. Curtis exercised this option. This evidence shows that Mr. Curtis's premiums began increasing before he was diagnosed with multiple sclerosis in September 2000. Furthermore, the above provision puts Mr. Curtis on notice that the fees (his premium) may be changed every six months following the first twelve months that the policy is in effect.

Moreover, while La.R.S. 22:229.1 states that an insurer may not increase the premium for a health insurance policy after receipt or notice of any covered claim, it does provide that an individual health insurer may increase its premium "if the increase is applicable to . . . all insureds who have the same individual accident and health plan or policy." In an affidavit, Eric Harrington, Blue Cross's Director of Marketing Support, set forth the factors used to determine Mr. Curtis's premium for each new year.[3] Mr. Harrington asserted that "[a]ll the rate increases applied to Mr. Curtis' policy . . . were increases applied in a monetarily identical manner to all insureds with the same individual health insurance policy as Mr. Curtis, *all factors being equal*." (Emphasis added).

By affidavit, Julie Landry, Blue Cross's Actuarial Analyst, stated that the premium increases were "a result of: the durational factor applicable to all individual major medical insurance policies; age bracket changes for Mr. Curtis; age bracket changes for Ms. Curtis; and increases to the 'selling rate' applicable to all Blue Max contracts." She explained how the durational factor was determined and applied. More importantly, she affirmed that "Mr. Curtis' durational rate increase was not determined by his own claims experience, the durational rate increase was not unique

---

[3] We note that at trial, counsel for Mr. Curtis introduced the entire record into evidence.

10

to his policy or even to Blue Max policies. It was applicable to all major medical insurance policies offered by Blue Cross. Mr. Curtis was not singled out in any way."

At trial Mr. Curtis did not show that the increase in premiums was due to his medical condition and/or claims history. Furthermore, Blue Cross presented evidence which demonstrated that it complied with the applicable statutes. The affidavits of Mr. Harrington and Ms. Landry clearly indicated that the increase in premiums was applied uniformly to those policyholders who had the same policy that Mr. Curtis had. According to Ms. Landry, "all major medical insurance policies offered by Blue Cross[,]" were subject to a durational rate increase. Moreover, La.R.S. 22:228.6 allows increases based on a durational factor. Given the foregoing evidence, we find that the record supports the trial court's determination that Blue Cross did not violate La.R.S. 22:228 and La.R.S. 22:229.1 by increasing Mr. Curtis's premiums.

Accordingly, this assignment is without merit.

*Fraud*

Mr. Curtis argues that "in neither the policy nor any of the advertising for BlueCross nor even their letters of explanation of rate changes in the year 2000, 2001, and 2002 did they ever mention a 'durational factor' being used . . . in the [d]ermination of health insurance premiums." Rather, Mr. Curtis alleges that it was not until 2003 that Blue Cross revealed this information, and it was only disclosed after counsel for Mr. Curtis inquired why his premiums were increasing. Mr. Curtis contends that had he known that "Blue Cross was applying a durational factor to increase his rate he could have obtained other insurance that did not have a durational factor applied to it before he was diagnosed [with] multiple sclerosis in September

11

of 2000." According to Mr. Curtis, he cannot obtain another health insurance policy because he now has a pre-existing condition.

Louisiana Civil Code Article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." Therefore, in order to succeed on an action for fraud against a party to a contract, three elements must be proven:

> (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.

*Shelton v. Standard/700 Assocs.*, 01-587, p. 5 (La. 10/16/01), 798 So.2d 60, 64.

At the outset, we note that when rendering its decision, the trial court did not specifically address the fraud issue insofar as it only stated that "I don't see where the plaintiff has shown any evidence that there has been a violation of law by the increase in premiums the defendant raised against the plaintiff." However, in its judgment, the trial court stated, "Plaintiff failed, as a matter of law, to sustain his burden of proof by a preponderance of the evidence[.]" It then granted the involuntary dismissal and dismissed *all claims* against Blue Cross.

After reviewing the record, we find that it does not support a determination that Blue Cross committed fraud. The evidence shows that Blue Cross sent Mr. Curtis letters in 2000, 2001, and 2002, informing him that there would be a premium adjustment on his policy. Blue Cross stated: "Your premium is determined by the level of health care costs, your age, your covered spouse's age, if applicable, and your geographic location. As these factors change, we must adjust your premium."

12

In a 2003 letter, however, Blue Cross explained: "Your premium is determined by the overall level of health care cost, your age, your covered spouse's age, if applicable, your geographic location, and duration of coverage, which is the length of time your policy has been in force."

We find that Mr. Curtis has not proven that Blue Cross had the intent to obtain an unjust advantage or to cause damage or inconvenience to him. Mr. Curtis's argument solely rests on when Blue Cross disclosed the use of a durational factor. He does not cite any jurisprudence or statutory law to support his position. Therefore, "we find that [Mr. Curtis's] conjectural allegations of fraud are too speculative." *Louisiana Pigment Co., L.P. v. Scott Constr. Co., Inc.*, 06-1026, p. 10 (La.App. 3 Cir. 12/20/06), 945 So.2d 980, 986. Given the circumstances, we find that the trial court did not err in dismissing Mr. Curtis's fraud claim.

This assignment has no merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of these proceedings are assessed against the plaintiff, Thomas D. Curtis.

**AFFIRMED.**